MOSES McCLURE, Respondent, *v.* MISSISSIPPI VALLEY INSURANCE COMPANY, Appellant.

### June 5, 1877.

1. Where W., the general agent of an insurance company at J., entered into a partnership with K., the fact that a circular was forwarded to the home office of the company, stating that K. was in charge at J., and would "take pleasure in serving both companies and patrons under the firm name of" W. & K., imposed no obligation upon the company of denying the authority of K. to act as its agent.

2. Where a policy of insurance is countersigned "W., agent, *per* K.," this form of signature is sufficient notice to put the insured upon enquiry as to the authority of K.

3. A general agent, with power to issue policies of insurance, the signing and delivery of which involve passing upon the character of risks, and consequently call for the exercise of discretion and judgment, cannot delegate his powers as such agent to another.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

Henderson & Shields, for appellant: An agent whose duty requires the exercise of skill or discretion cannot delegate his authority. — *Brown* v. *Railway Passenger Assur. Co.*, 45 Mo. 221; *Grady* v. *American Central Ins. Co.*, 60 Mo. 116; *Commercial Bank* v. *Norton*, 1 Hill, 501; *Williams* v. *Woods*, 16 Md. 220; *Norton* v. *Ball*, 43 Mo. 113. The signature " W., agent, *per* K.," was sufficient to put the insured upon enquiry. — *Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117.

Noble & Orrick, for respondent: W. had power to authorize K. to countersign policies of insurance for him, and thus bind the company. *Grady* v. *American Central Ins. Co.*, 60 Mo. 116; *Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117. It was not necessary that W. should sign in person; if he directed K. to do it, or, with a full knowledge of the act, adopted it as his own, it is sufficient. 1 Hill, 501; 8 N. Y. 398; 10 N. Y. 213; 13 B. Mon. 400. The company is bound by the acts of K., as it gave him the apparent authority to act. — *Lightbody* v. *Insurance Co.*, 23 Wend. 18.; *Rossiter* v. *Trafalgar Life Assn.*, 27 Beav. 377; 4 Cow. 645; 58 Ill. 463; 12 Iowa, 126; 57 Mo. 107.

Hayden, J., delivered the opinion of the court.

This is an action on a policy of insurance against fire. The petition alleges that the defendant, in March, 1874, issued a policy to the plaintiff, by which it insured him in the sum of $1,500 on his stock of merchandise, then in a frame warehouse in Baxter County, Arkansas. The issue at the trial was whether the policy was made and delivered by the defendant. There was evidence tending to show that one Wickersham was the agent of the defendant at Jacksonport, Arkansas, with power to make insurance by policies to be countersigned by him, and that a statement had been filed by the defendant with the insurance commissioner of Arkansas, under a law of that State, to the effect that Wickersham was the agent of the defendant at Jackson-

port, with power "to solicit risks, issue policies, receive applications, or receive premiums" for defendant; that in February, 1874, Wickersham had an office at Jacksonport, where he kept the books and papers pertaining to the agency, among others, blank policies furnished by the defendant, with lithographic signatures of the president and secretary of the company, and with blanks for his own signature, to be attached according to a clause in the policy which provided that the policy should "not be valid until countersigned by the duly authorized agent of this company at Jacksonport, Arkansas." It appeared that in February, 1874, Wickersham formed a partnership with one Kerr, by which, according to written articles, which were admitted in evidence, they agreed to carry on a fire and marine insurance agency business, which was to be under the control of Kerr during the absence of Wickersham ; that Wickersham turned over to Kerr certain blanks and papers, among others, blank policies of the defendant, which remained in the office of Wickersham & Kerr, in charge of Kerr ; that Wickersham had formed another partnership in a similar business, which was to be carried on at Helena ; and that circulars were issued, one of which was mailed to the defendant, advertising these changes, and that the agency at Jacksonport was in charge of Kerr.

In March, 1874, and while Wickersham was absent from Jacksonport, the plaintiff, who had previously had conversations with Kerr about taking a policy, applied at the office of Wickersham & Kerr for insurance on his goods, when Kerr said he would select two of the best companies he represented, and issue to plaintiff a policy of $1,500 in each. Accordingly, Kerr issued to the plaintiff the policy sued on, which bore the counter-signature " J. W. Wickersham, agent, *per* Will. W. Kerr," and received from the plaintiff the premium. Kerr testified that the defendant company was included in his partnership with Wickersham, it being a company for which Wickersham had the agency ;

that the authority he (Kerr) had to take the risk was derived from the articles of partnership; that Wickersham was not present when the policy was issued; that he (Kerr) made no report as to it to the defendant, but reported its issue to Wickersham, whose agent he was.   Upon this, the plaintiff contended Kerr had authority from Wickersham, and that the latter adopted Kerr's act.   It was admitted that there was a loss of the goods by fire to an amount exceeding $1,500.   At the request of the plaintiff the court gave the following instruction:

" If the court, sitting as a jury, finds from the evidence that, at the time the policy sued on was issued and delivered to plaintiff, J. W. Wickersham was the agent of defendant at Jacksonport, Arkansas, and that as such agent he was duly authorized to solicit risks, issue policies, and collect premiums on the same, and that, while acting as such agent, said Wickersham authorized W. W. Kerr to countersign said policy sued on, in the name of Wickersham, agent, then said policy is the policy of defendant."

The following declarations of law, asked by the defendant, were refused by the court:

" 1. That although the court, sitting as a jury, may find that Wickersham was the agent of defendant at Jacksonport, Arkansas, with power to countersign and issue policies for defendant; and although the court may further find that Wickersham & Kerr formed a copartnership for the purpose of carrying on the business of fire insurance at Jacksonport, said Wickersham had no right to delegate his authority to issue policies, as agent of defendant, to said Kerr, or to authorize him to countersign and issue policies that would be binding on defendant, unless defendant had expressly authorized him to do so, or, subsequent to such delegation, ratified the same.

" 2. That although the court, sitting as a jury, may find from the evidence that Wickersham was agent of defendant, with power to countersign and issue policies for defendant,

and that one Kerr countersigned and delivered the policy sued on to plaintiff, in the name of Wickersham, and that Wickersham had authorized Kerr to sign Wickersham's name to defendant's policies, and to issue the same in his (Wickersham's) absence, such act of Kerr's will not bind defendant, unless the court, sitting as a jury, further finds that such delegation of authority to Kerr was made by Wickersham with defendant's knowledge and consent, or that Wickersham was expressly authorized to appoint sub-agents for defendant, or that defendant had notice of the issue of said policy sued on by Kerr, and made no objections thereto on account of Kerr's assuming to act as defendant's agent.

" 3. The issuing of a policy of insurance by an agent for an insurance company, when the nature and position of the property to be insured, and the character of risk, is to be determined by the agent, is a delegation of judgment and discretion to the agent; and an agent appointed by an insurance company for that purpose, and with power to countersign and issue policies, cannot delegate his authority so to do to another, or appoint a sub-agent to act for him, without the knowledge or consent of the company, so as to make the act of such agent binding on the company.

" 4. There is no evidence in this case showing that Wickersham ever delegated his authority to Kerr, as defendant's agent, or authorized him to issue policies for defendant in his (Wickersham's) name, and plaintiff cannot recover.

" 5. The plaintiff was bound by the conditions of the policy sued on, and one of the conditions of the policy sued on, and offered in evidence, was that ' this policy should not be valid unless countersigned by defendant's agent at Jacksonport, Arkansas ;' and the signing of Wickersham's name by Kerr was sufficient to put plaintiff on his enquiry as to what authority Kerr had to so act for Wickersham, and it was the duty of plaintiff to make enquiry thereof from defendant ; and unless this court, sitting as a jury, find

that he did so enquire, and was led by defendant, either by its silence after notice, or by its acts and statements to him, to believe that W. W. Kerr had authority to issue said policy to plaintiff, then the verdict should be for the defendant.''

The court, sitting as a jury, found for the plaintiff; and the case is here by appeal.

There is no rule of the law of agency better settled, and none which is of more importance not to have unsettled, than that where a principal commits to an agent powers involving the exercise of peculiar skill, discretion, or judgment, in the trust that the agent will exercise the personal qualities for which, it is to be presumed, he was selected, the agent cannot delegate such powers, or any portion of them, to a third person, so as to affect the rights of his principal, unless the principal gives the agent an express power of substitution. The exceptions to the axiom that an agent cannot delegate his authority do not affect the above rule. Thus, where it is the custom of trade for the agent to employ sub-agents in parts of the work; where, from the nature of the business, a sub-agent is necessary or is required by law, as may happen in the case of property to be sold by an auctioneer, or a bill to be collected by a bank or protested by a notary, in these and similar cases the principal, so far as concerns the act to be performed by the substitute, has not committed to the agent a trust involving personal qualifications. By the understanding of the parties in these cases, the agent is entitled to perform the acts through the aid of third persons; and the essential question in all such cases must be, What was the understanding of the parties? *Dorchester, etc., Bank* v. *New England Bank*, 1 Cush. 186. In the cases put, the principal does not expect or require personal action, any more than he does when the substitute exercises no discretion, but performs a merely mechanical act. But when the question is one of judgment, discretion, or peculiar skill, and the principal has

bargained for the exercise of these qualities in the agent, he is entitled to what he has bargained for, and the agent cannot affect the rights of the principal by the appointment of a substitute. The privity which is the basis of the obligation of the principal does not exist between him and the substitute. *Appleton Bank* v. *McGilvray*, 4 Gray, 518; *Cobb* v. *Becke*, 6 Ad. & E. 929; *Stephens* v. *Badcock*, 3 Barn. & Adol. 354; 2 Man. & Sel. 298.

Applying the rule to the facts of this case, we find that the act performed by Kerr, who, it is asserted, was an agent of Wickersham and a sub-agent of the appellant, was an act involving skill, discretion, and judgment, as opposed to an act merely mechanical. This is too plain for discussion. No distinction can be made between risks, and various and complicated questions are presented in the determination by an insurer whether he shall accept or reject some of them. It is with a view to peculiar qualities — special knowledge, discernment, judgment — that the insurer selects the agents who are to pass upon risks. If the agent so selected may disregard this trust and depute a subordinate, a mere clerk, who is not even the agent of the agent, but an employee, and who may have neither experience nor discretion, to exercise such a power, as is said may be done in a case relied on by the respondent, then no insurance company whose business is widely spread can at any time have assurance of its solvency. The business of insurance is a beneficial and now absolutely necessary business; and the rules of law are not to be warped against it or those engaged in it. The doctrine that an agent cannot delegate any portion of powers requiring the exercise of discretion and judgment, when specially entrusted with them, is beyond controversy. It is as clearly settled by necessary deduction from the law of insurance, and by common knowledge, that the business of passing upon insurance risks is a special employment, requiring experience, peculiar skill, discretion, and judgment. As the law would,

in the case of another defendant, from these premises deduce the legitimate conclusion, so it must here.   The position that the issuing of a policy of insurance by an agent, when it involves passing upon property as a suitable or an unsuitable risk for an insurer to accept, is an act involving judgment, and incapable of delegation without express authority, is undoubtedly correct, and it was error in the court below to refuse to apply it to the facts of this case. There is no parity between such a power and the acts which have been held to be capable of delegation.   *Lynn* v. *Burgoyne*, 13 B. Mon. 400; *Commercial Bank* v. *Norton*, 1 Hill, 505; *Williams* v. *Woods*, 16 Md. 249; *Gillis* v. *Bailey*, 21 N. H. 149; *Powell* v. *Tuttle*, 3 N. Y. 396; *Ex parte Winsor*, 3 Story, 425.   The question is not merely as to the signing and delivery of the policy.  Those acts in themselves may be unimportant; but they are essential when they imply the previous exercise of judgment.   If the discretionary powers had been exhausted by the general agent, and he had then directed the signing and delivery of the policy, the latter acts would have been mechanical.   But in the present case there is no evidence tending to show this state of facts.   The power assumed by the alleged sub-agent, Kerr, was a discretionary power.   The instruction approved by the court ignores the legal distinction founded on the nature of the act, and is such as might have been given had the taking of the risk been a purely mechanical performance.

The respondent apparently relies on the articles of partnership between Wickersham and Kerr.   But these were irrelevant, and should have been excluded.   The essential objection to the respondent's theory of this case is that there is no privity between the appellant and Kerr on which to base an obligation on the part of the appellant to respond to the act of Kerr.   This privity cannot be created by the acts of Wickersham and Kerr.   It must arise from the appellant's own conduct.   Their agreement, however widely

published, cannot impose liabilities on the appellant. So far as any inference from inaction on the appellant's part is concerned, that could legitimately be made only in case of a legal obligation to act. It does not appear that a knowledge of the circular letter issued by Wickersham and the two firms of which he was a member was brought home to the appellant ; and if it had been, the statement in it that "the local agency business at Jacksonport, Arkansas," was in charge of Kerr, who would "take pleasure in serving both companies and patrons under the firm name of Wickersham & Kerr," was not sufficient to call upon the appellant to deny an authority, when the circular assumed none. It contained no reference, nor did the postal-card mailed contain any, to the appellant's company, and action on its part would have been gratuitous. The failure to respond to the solicitations of insurance agents can hardly be considered a legal acceptance of their proposals.

If there was any point of connection between Kerr and the appellant, this should have been shown by evidence, and the court should not have been left to arrive at it by conjecture. It might have been shown in various ways : as, by a previous course of dealing by which the appellant had recognized such acts of Kerr as the one here in question ; or, as just indicated, by bringing home to the appellant knowledge of Kerr's assumption of authority to take risks or do acts of a similar character for the appellant, and by showing the acquiescence of the appellant, with a knowledge of the facts, in such assumptions of authority. *Grady* v. *American Central Ins. Co.*, 60 Mo. 116 ; *Bodine* v. *Exchange Fire Ins Co.*, 51 N. Y. 123 ; *Rossiter* v. *Trafalgar, etc., Assn.*, 27 Beav. 377. In the absence of any indications of privity, the appellant cannot be held. If a person who is not an agent assumes to act as if he were such, the fact that third parties may be injured by such an assumption of authority cannot make the alleged principal liable. If the agent employs a substitute without authority

from the principal, this is the agent's act, and he is responsible. In the case at bar, the respondent had no right to take the policy and presume that Kerr was the agent of the appellant. Any one might have been in possession of blanks, and the fact that Wickersham's name was signed "J. W. Wickersham, agent, *per* Will. W. Kerr," was, especially in connection with the clause in the policy above quoted, sufficient to put the respondent upon his guard. Kerr pretends that he derived his authority from the partnership articles, but he did not sign the firm name. He used a form of signature which, in itself, should have put the respondent on his guard. *Atwood* v. *Munnings*, 7 Barn. & Cress. 278 ; *Nixon* v. *Palmer*, 8 N. Y. 400 ; Whart. on Ag., sec. 137. As there was no previous connection between Wickersham and the respondent, the case on its face was one of a person professing to act as a sub-agent in a matter involving discretion and judgment, and to bind a distant principal by the act. It was clearly the duty of the respondent to make enquiry. ·Any other view than that now taken would be repugnant to well-settled principles of the law of agency, would lead to collusion between self-appointed agents and third parties, and would have the singular effect of binding distant principals by the acts of persons who would be total strangers to them.

It is hardly necessary to point out the plain lines of distinction which separate the cases most strongly relied on by the respondent from the present. In those of which *Lightbody* v. *North American Insurance Company*, 23 Wend. 18, is an example, the question is merely whether the principal shall be bound by the acts of a general agent, acting within the general scope of his authority, but departing from private instructions of his principal. The considerations there are that third parties cannot know the limits secretly imposed, and that if such agents transcend their orders, those who have held them out to the world as clothed with general authority must suffer, as between themselves and inno-

cent third persons who have acted upon the faith of what the principal himself has done. In the case at bar the point is that the principal has done nothing, and he cannot be bound by the acts of one who, to him, is a stranger. If it be said that the question is as to the powers of the general agent in appointing a substitute, the reply is that it is an axiomatic truth, the knowledge of which is presumed, that an agent cannot delegate his powers; that the law compels enquiry, when there is palpable evidence of such delegation, in matters where the authority cannot be implied. If the rule laid down in the class of cases just referred to is necessary to prevent fraud and encourage confidence in dealing, the present rule is necessary to prevent the collusive assumption of authority, and to enable the principal to secure the results of the care, skill, and means which he has expended in selecting suitable agents.

In the case of *Bodine* v. *Exchange, etc., Insurance Company, supra*, the question was whether the defendant had renewed the policy by a certificate of renewal. The evidence showed that, on the day on which the policy expired, the sub-agent, acting for the agent, called upon the principal and obtained a renewal certificate from it. The evidence showed, moreover, that there had been a course of dealing for several years between the sub-agent and the company, by which the former had procured from the latter policies and renewal certificates, which, with the knowledge and assent of the agent, he had frequently delivered to the parties for whom they were intended, without exacting payment of the premiums. The immediate question was merely one as to the payment of a premium, under a clause in the policy providing that the policy should not be considered binding till the premium was actually paid. There was evidence tending to show that the company had authorized the sub-agent to waive the payment of the premium, and to deliver the renewal certificate. The question of the power of an agent to bind his principal by delegating to a clerk of the

agent the authority to pass upon a risk did not arise in the case, and the language of the learned commissioner as to what an insurance agent may authorize his clerk to do is neither required by the facts of the case as reported nor sustained by the authority adduced to uphold it.   Indeed, the *dictum* of the learned commissioner, if adopted as law and pushed to its necessary consequence, would authorize the youngest clerk in the office of a general agent who had power to issue policies of insurance, to take any risk provided the agent had assumed to authorize the clerk to take risks.   The principal would then be bound by the acts of his agent's clerk in reference to matters as to which he had specially contracted with the agent for the exercise of the agent's skill, experience, and judgment.   This *dictum* not only ignores the doctrine of privity, and the well-settled distinction between discretionary powers and those which are merely mechanical, but it disregards the consideration that, even where, by the course of business or the understanding of the parties, the agent may employ a sub-agent, there is a duty imposed upon the agent of exercising a sound judgment, and so selecting a substitute who is well fitted for the service to be performed.   *Dorchester, etc., Bank* v. *New England Bank,* 1 Cush. 177.

In *Rossiter* v. *Trafalgar, etc., Association, supra,* both the agent's and sub-agent's names were attached (though the former was in print) to the letter to the medical officer, who regularly answered it and sent it to the agent's office; whence, it would appear, it was sent to the company, as found by the Master of the Rolls.   The company received the certificate signed by the sub-agent; knowledge was thus brought home to them, and it does not appear that they dissented.   But, in truth, the act of judgment and discretion in that case was the act of the medical officer who passed upon the risk, and who was the physician appointed by the company for that purpose.

It follows from what has been said that the court below

erred in admitting the policy and in refusing to sustain the demurrer to the evidence. As the case stands, there is, in legal contemplation, no evidence to sustain the finding of the court. Judgment would be entered here for the appellant were it not possible that the respondent may have further evidence. The judgment of the court below is reversed and the case remanded. All the judges concur.