JANUARY TERM, 1881. 671

Knox and another vs. The Lycoming Fire Ins. Co.

Knox and another vs. The Lycoming Fire Insurance Company.

*December 17, 1880 — January 11, 1881.*

INSURANCE AGAINST FIRE. *(1) Estoppel of insurer to deny agent's authority. (2) Agency under the statute. (3) Proof as to title and fraudulent concealment. (4) Reformation of policy as to date of risk.*

1. The agent who issued the policy in suit, was forbidden by his commission to insure property outside of a defined district, not including the city in which plaintiffs' property was situate; but plaintiffs neither knew nor inquired into the local limits of the agent's authority. The issue of the policy was promptly reported to the company's general agent for the northwest; after the loss, plaintiffs sent notice thereof to the general office, and subsequently furnished the formal proofs, and submitted to an examination touching the loss by said general agent; and the company did not object to receiving the proofs, or offer to return the premium; nor did it in any way object that the policy was issued without authority, until after action brought. *Held,* that it is *estopped* from denying the agent's authority.

2. The person who issued the policy must also be deemed an agent of the company for that purpose under sec. 1977, R. S.

3. Upon the evidence (for which see the opinion), this court holds (contrary to the findings of the trial court) that plaintiffs did not fraudulently conceal from the agent any material fact bearing upon the risk; and that they had title to the insured property at the time of the loss.

4. It appearing from the undisputed evidence, that, by the contract between plaintiffs and the agent, the risk was to begin from the time when the premium was paid, which was before the loss, while the policy issued was dated *after* the loss, plaintiffs are entitled to a reformation of the policy.

APPEAL from the Circuit Court for *Fond du Lac* County. Action upon a policy of insurance issued by the defendant company to the plaintiffs on a quantity of lumber in the city of Stevens Point. The complaint contains a prayer that the policy be reformed, and for judgment for the amount insured. The facts of the case, as they appear from the pleadings and evidence, are substantially as follows: May 12, 1877, one L. M. Taylor, who was the agent of the defendant company at

Menasha, called upon the plaintiffs in Stevens Point, and solicited them to take insurance in that company on their lumber in the latter place. The parties thereupon made a contract of insurance by which the agent agreed, on behalf of the company, to insure certain specified lumber of the plaintiffs for a fixed time to the amount of $3,000, at a rate then agreed upon. The plaintiffs paid the premium, the agent gave a receipt therefor, and it was agreed that the risk commenced at that time. The agent returned to Menasha, and on Monday morning, May 14, made out a policy to plaintiffs in the usual form, and deposited it in the post-office, addressed to them at Stevens Point. The policy was drawn pursuant to the contract of Saturday preceding, except that by its terms the risk was to commence at noon, May 14, the day it was written. The lumber of plaintiffs so insured was totally destroyed by fire during the forenoon of Monday, May 14. Due proofs of loss, showing the original contract of May 12, were furnished the company by the plaintiffs, in compliance with the terms of the policy.

The cause was tried by the court without a jury. The defenses to the action, relied upon by the company, were, (1) that Taylor had no authority from the defendant to make the contract of insurance upon which the action was brought; (2) that the plaintiffs fraudulently suppressed and concealed from the agent certain facts material to the risk, which were known to them and not to the agent; and (3) that the plaintiffs were not the owners of the insured lumber when the contract was made, nor when the lumber was burned. The testimony relating to these defenses is sufficiently stated in the opinion. The circuit court found that each of these defenses was established by the evidence, and accordingly gave judgment for the defendant. The plaintiffs appealed from the judgment.

For the appellants there was a brief by *Raymond & Haseltine*, their attorneys, and *Vilas & Bryant* of counsel, and oral argument by *Wm. F. Vilas*. They argued, *inter alia*, 1. That

under section 1, ch. 13, Laws of 1871 (Tay. Stats., 981*a*), Taylor was an agent of the insurance company " to all intents and purposes." He was appointed subject to this statute, and it entered into all the dealings which the company authorized him to manage on their part with the public. *Reilly v. Ins. Co.*, 43 Wis., 449. Independently of this statute, the powers conferred upon him constituted him a general agent of the company. Wood on Fire Ins., §§ 383 et seq.; *Lightbody v. Ins. Co.*, 23 Wend., 18; *Ætna Ins. Co. v. Maguire*, 51 Ill., 342; *Gloucester Man. Co. v. Howard Ins. Co.*, 5 Gray, 497; *Baubie v. Ins. Co.*, 2 Dill. C. C., 156; *Taylor v. Ins. Co.*, id., 282; *Sanborn v. Ins. Co.*, 16 Gray, 448; *Angell v. Ins. Co.*, 59 N. Y., 171; *Ellis v. Ins. Co.*, 50 id., 402; *Warner v. Ins. Co.*, 14 Wis., 318; *Com. M. M. Ins. Co. v. Ins. Co.*, 19 How., 318; *Mowry v. Ins. Co.*, 9 R. I., 346; *Ill. Fire Ins. Co. v. Stanton*, 57 Ill., 354; *Eclectic L. I. Co. v. Fahrenkrug*, 68 id., 463; *Palm v. Ins. Co.*, 20 Ohio, 529. 2. That the contract of insurance was abundantly ratified by the company. With full knowledge of the facts, it failed to repudiate or disavow the contract until this action was brought. It received the premium, and has never offered to return it. *N. W. Iron Co. v. Ins. Co.*, 26 Wis., 78, 81. It has availed itself of the stipulations of the policy by requiring the plaintiff to submit to an examination under oath, and by insisting upon formal proofs of loss. *Webster v. Ins. Co.*, 36 Wis., 67; *N. W. Mut. L. Ins. Co. v. Ins. Co.*, 40 id., 446.

*G.. W. Cate*, for the respondent, contended, among other things, that the powers of Taylor as agent were clearly defined in his written commission. There is no ambiguity in that instrument, and the power is to be strictly construed. Story on Agency, § 73; Wood on Ins., § 396; *N. Y. Life Ins. & T. Co. v. Beebe*, 7 N. Y., 364. The limitations imposed upon the power granted become a part of it, and govern it. Wood on Ins., §§ 387, 390. And where the principal has not held out the agent as possessing any greater power than that contained

in the writing, if the agent goes beyond it, the principal will not be bound. Story on Agency, § 133, n. 1; Wood on Ins., § 392; *Lobdell v. Baker*, 1 Met., 193; 6 Conn., 354; 42 Wis., 616; 5 Am., 64. It has been decided that when the agent is authorized to insure not to exceed a given sum in any one risk, insurance in excess of such sum will not bind the company. *Baines v. Ewing*, L. R., 1 Exch., 320; 4 H. & C., 35; 14 Weekly Rep., 782; 14 L. T. (N. S.), 733. Also, that when the agent's commission excludes the right to insure particular kinds of property, the company will not be liable for a risk on property so excepted. *Reynolds v. Ins. Co.*, 36 Mich., 131. Plaintiffs were bound to take notice of the limitations upon the power of the agent. Wood on Ins., §§ 390, 392; Story on Agency, §§ 88–91. Such notice will be presumed. *Backman v. Charlestown*, 42 N. H., 125; 1 Wait's Actions & Defenses, 226, 227; 3 Hill, 279; 49 N. Y., 555.

LYON, J. The evidence is undisputed that, by the terms of the contract between the plaintiffs and the agent Taylor, the risk was to commence when the premium was paid, that is, on Saturday, May 12. The plaintiff *W. H. Knox* (who negotiated for the plaintiffs), and Taylor, both so testified. If, therefore, the defendant company is otherwise liable, it is manifest that the policy should be reformed to express the contract which the parties actually made.

The court found that Taylor had no authority to bind the defendant by his contract with the plaintiffs; that the latter were guilty of a fraudulent suppression or concealment of facts material to the risk; and that the plaintiffs were not the owners of the insured property. If either of these findings is supported by the evidence, the judgment cannot be disturbed. If none of them are so supported, the judgment must be reversed. They will be considered in the order above stated.

1. The proposition that Taylor had no power to bind the

company by his contract with the plaintiffs made in its behalf, rests entirely upon the terms of his commission or certificate of authority issued by the company, dated October 16, 1876. That instrument appoints him the agent of the company, "with full power to receive proposals for insurance against loss or damage by fire in Menasha and Neenah and vicinity, and to fix rates of premiums, to receive moneys, and to issue, countersign, renew, and consent to the transfer of, policies of insurance, signed by the president and attested by the secretary of the said *Lycoming Fire Insurance Company*, and in all manner to attend to the business and duties of the said agency, subject to the by-laws and regulations of said *Lycoming Fire Insurance Company*, and to such instructions as may from time to time be given by its officers; and it is expressly understood that all policies shall be null and void, and of no binding effect upon this company, if issued upon property not situated within the district in which the agent shall reside or for which he has been appointed, except the written permission of the officers of this company be previously specially obtained."

It does not appear that the plaintiffs knew the terms of the certificate, or that they made any effort to learn the extent of Taylor's authority to act for the company. It was satisfactorily proved that, on the day after the fire, the plaintiffs forwarded a notice of the loss to the general office of the company, addressed to its secretary. On or about May 26th, they forwarded formal proofs of loss; and on May 30th, *W. H. Knox*, one of the plaintiffs, was subjected to an examination respecting the loss, by one Harmon, the general agent of the company for Wisconsin and other states. A stipulation in the policy gave the company the right to such examination. June 9th, Taylor forwarded to the company an itemized statement of premiums received by him in May, which contains the item: "Policy 111, *Knox Bros.*, $33.90." After this is written "not reported;" but when or by whom does not appear.

The number of the policy — 111 — is also given in the notice of loss of May 15th. Afterwards, under dates, respectively, of August 1st and August 11th, the plaintiffs furnished the defendant additional proofs of loss. It does not appear that the defendant has ever offered to return to the plaintiffs the premium paid by them to Taylor, and accounted for by the latter to it; neither do we find any proof that the defendant objected to receiving the proofs of loss, or that, before this action was brought, it ever intimated to the plaintiffs that Taylor had no authority to contract with them, on its behalf, for insurance; and yet Harmon, the general agent, testified that he knew as early as May 18th that Taylor had taken the risk, and that he learned the fact from Taylor's daily report.

On this state of facts, we need not stop to investigate the extent of Taylor's actual authority in the premises; for, under numerous adjudications here and elsewhere, the defendant has repeatedly estopped itself to deny his authority. The conduct of the company in respect to the policy is entirely inconsistent with the idea that Taylor had no authority to issue it, and on familiar principles estops the company from denying his authority to do so. Bigelow on Estoppels, 578; *Webster v. Ins. Co.*, 36 Wis., 67; *N. W. M. L. Ins. Co. v. Germania Fire Ins. Co.*, 40 Wis., 446. Again, Taylor must be deemed the agent of the defendant in respect to the policy in suit by virtue of section 1977, R. S., p. 584. The acts of the defendant in respect to the policy bring the case within the rule of *Schomer v. Hekla Ins. Co.*, *ante*, p. 575. The opinion by the chief justice contains all that it is necessary to say on the subject.

2. Were the plaintiffs guilty of suppressing or concealing from the agent, Taylor, any fact material to the risk? On the undisputed evidence, we think this question must be answered in the negative. It appears that the insured lumber was piled about eight rods north of the planing mill of Copps & Co.,

and that about twenty rods south of the planing mill there was a shingle mill, known as the Clifford mill. This shingle mill was so defectively constructed that it threw sparks, coals and cinders from the smoke-stack to an extent that endangered mills and lumber in the vicinity. The fire which consumed plaintiffs' lumber was first discovered in the mill yard of Copps & Co., from whence it spread to plaintiffs' lumber, and consumed it. It is supposed that the fire originated from the Clifford mill, the wind blowing at the time from the direction of that mill.

It is claimed that the plaintiffs failed to inform Taylor of the dangerous character of the Clifford mill, which is the fraudulent concealment alleged. The plaintiff *W. H. Knox* testified that he did give Taylor that information when the negotiations for insurance were pending on May 12th, and also during the preceding fall, when Taylor was there making surveys of all the mills in that vicinity. In fact, during such negotiations, one Whitney told *W. H. Knox*, in the presence and hearing of Taylor, that a fire from the Clifford mill had been kindled in the yard the day before. The testimony of Taylor as to what *Knox* said to him concerning the danger from the Clifford mill is so conclusive against the claim that there was any fraudulent concealment, that we shall be justified in quoting from it somewhat at length. He says: "I went to *Knox's* office about 1 o'clock. I was asking him about the lumber when I was taking the application. *Question.* Anything said in your hearing about the hazard of the lumber? *Answer.* The remark he made [was], he was afraid of the mill over there. *Q.* What mill? *A.* That shingle mill. He pointed it out to me. There was nothing else said to me about the shingle mill, only it threw sparks of fire. They said they were damned afraid that it would burn them up. They called my attention to it. I don't know as I made any inquiries in particular as to the extent of the danger. I looked at that mill. I saw the distance. I saw it was detached. I knew it

was a good risk.  Q.  You knew it was, notwithstanding *Knox*
was telling you at the same time he was afraid it would burn
him up?  A.  Yes, sir; that might occur at any time.  Such a
thing might occur at any time.  I inquired if the mill threw
fire.  He said it did.  I don't know as he said he was afraid
it would burn that lumber up in particular.  He said it would
burn everything up.  I didn't hear him say that he was afraid
that mill throwing sparks would burn this particular lumber
up.  He said he was afraid the thing would burn them all up
there; and I made the remark, 'Why, I insure against fire.'
That was in the office.  We were talking of the lumber.  When
he spoke of the danger from the mill, he didn't say he was
afraid the lumber would be burned up.  I understood him to
mean generally.  Q.  If you had understood that that lumber
was in special danger from this mill, you wouldn't have taken
the risk, would you?  A.  I would have taken the risk anyhow,
because it was a good risk, no matter what he said to me.  I
call myself a prudent sort of an agent.  I would take that
risk from the distance, detached as it was.  I would have taken
it because it was a good risk.  They said the yard had been on
fire, and they supposed the fire came from the Clifford mill.
They told me so at the time.  I understood the yard had been
on fire from that mill — I supposed it was the Clifford mill,—
right around the mill, between that mill and the lumber.  I
understood then that the Copps' yard was on fire, but didn't
understand them to mean the yard where the lumber was, but
somewhere about where Copps' mill stood.  It was all there
together.  I should think it was pretty nearly 400 feet from
Copps' mill to the Clifford mill.  I understood them to refer
to that yard between Copps' and Clifford's mill that had been
on fire, and not anything up where the lumber was.  There
was a man came in — I think it was Whitney,— who made the
remark that there had been a fire here lately, or something
like that.  He did not make that remark to me.  I think there
was *Knox*, Copps and Whitney in the office.  He simply made

the remark.   I heard it.   The remark that *Knox* made, that he was afraid that damned mill would burn him up, was made right there.   We were sitting at the table.   I don't know whether it was directed to me or not.   He spoke of it being a dangerous mill.   He didn't say so to me as agent.   He spoke it right there in the conversation.   He called attention to it no more than anybody else."

In view of this testimony, which agrees with that of *W. H. Knox*, and which is entirely undisputed, it cannot be held that the plaintiffs were guilty of the alleged fraudulent concealment.

3. The question of title may readily be disposed of.   *W. H. Knox* testified positively that the plaintiffs were the owners of the lumber.   He was not cross-examined on the subject. The only testimony which tends in any manner to controvert this direct, unqualified assertion of the plaintiffs' ownership, is that of the plaintiff *S. G. Knox*, who on his cross examination testified as follows:   "I don't think the title of that lumber was in Mr. Scott.   He had had a bill of sale of it. *Question.*  Wasn't he the holder of that bill of sale at that time?  *Answer.*  I couldn't tell you.  I didn't do the business. My brother did the business.   That bill of sale was given as security for a debt."

It will be observed that *S. G. Knox* did not testify that Mr. Scott then held a bill of sale of the lumber, but only that he once did:  "He had had a bill of sale of it."   The witness evidently thought the security had been cancelled, although he did not know the fact, else he could scarcely have said, "I don't think the title of that lumber was in Mr. Scott."   Coming, as this testimony does, from one who had no personal knowledge of the transaction with Mr. Scott, we cannot say that it overcomes the positive testimony of *W. H. Knox* (who had such personal knowledge) that the plaintiffs were the owners of the lumber.   If the defendant seriously intended to dispute the plaintiffs' title, it should at least have interrogated

*W. H. Knox* concerning the same, or should have called Mr. Scott as a witness. We are satisfied by the evidence that the plaintiffs were the owners of the insured lumber when the same was burned.

Our conclusion is, that the findings of the circuit court on all of the propositions above considered are erroneous, and that the plaintiffs have established their right to recover by a clear and satisfactory preponderance of evidence.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to the circuit court to give judgment for the plaintiffs for the relief demanded in the complaint.

