THE CONTINENTAL INSURANCE COMPANY

*v.*

STEPHEN RUCKMAN.

*Filed at Mt. Vernon January 26, 1889.*

1.   INSURANCE—*proofs of loss—waiver of defects therein.*   Where proof of loss has been served upon and retained by the insurance company, without objection, and the company refuses to pay the loss, placing its refusal upon some ground other than defects in the proof, any further performance of the condition in the policy in relation to proofs will be regarded as waived, and the company will be estopped, in an action on its policy, from making any formal objections to the proofs.

2.   SAME—*insurance agents—general agents—of their powers, and who so considered.*   General agents of an insurance company, in the matter of settling contracts of insurance and issuing policies, will be presumed to have competent authority to stipulate for the insertion in the policy, that the building insured may remain vacant and unoccupied for a prescribed time.   As to the exercise of powers within the apparent purview of their agency, the company will be bound by their acts, unless there were, in fact, limitations upon their authority, of which the assured had notice.

3.   Where a foreign insurance company appoints A and B its local agents in a particular locality, and supplies them with blank policies properly signed by the company, which such agents are authorized to fill up, countersign and deliver to the assured, this will constitute them general agents of the company in the matter of soliciting and accepting risks, agreeing upon and settling the terms of insurance, and carrying the same into effect by issuing the policies.

4. Same—*limitation in policy, as to powers of agent—construed.* A clause in a policy of insurance, that "it is further understood and made a part of this contract, that the agent of this company has no authority to waive, modify or strike from this policy any of its printed conditions," does not operate as a limitation of the agent's authority in agreeing upon and settling the terms of the contract. It is a limitation upon the powers of the agent to waive, modify or strike from the policy, when once made, any of its printed conditions. There can be no waiver of rights under a contract until the contract is consummated. Before a blank policy is filled and signed and delivered, the agent may change the printed conditions therein.

5. Same—*acts of sub-agent—how far considered the acts of the general agent.* An insurance company appointed A and B its general agents in effecting insurance and issuing policies, and they employed one C to assist them, and to solicit applications for insurance. C did their general office work, kept the books of the firm, conducted their correspondence, received the premiums paid at the office, and filled up policies, all except countersigning. When C negotiated a policy to a person he expected to call for it, he would so inform the firm, and a blank policy, duly countersigned, would be left with him, to be by him filled up and delivered. The employment of C by the firm, and the general nature of his duties, were known to the general State agents of the company. C contracted with D to insure leased property, and agreed to insert in the policy a clause that a failure to keep the buildings thereon occupied thirty days or less should not defeat the policy. C filled a blank printed policy, countersigned by A, but failed to insert such a clause, and delivered to D a policy which did not allow the premises to become vacant and unoccupied: *Held,* that the acts of C, the sub-agent, would be regarded as the acts of A and B, the general agents, and the contract made in respect of D's insurance was within the authority of the general agents, and that a court of equity would reform the policy in accordance with the verbal contract.

6. Same—*notice to assured—by limitations in the policy as to powers of agents.* An agent of an insurance company promised the assured to deliver to him a policy containing a provision that the property might become vacant and unoccupied thirty days, but not longer, but the agent gave a policy containing a stipulation that if the premises were suffered to be unoccupied, the policy should be void, telling the assured that the policy did contain a provision such as had been agreed upon. The policy contained a notice that agents had no right to waive, modify or strike out of it any of its printed conditions. The assured never saw any of the blank policies before, and could not read. It was held doubtful whether the delivery of the policy was notice of its contents, in view of the inability of the assured to read, and the agent's assurance that the policy was drafted in accordance with the contract.

7. SAME—*foreign companies—powers of their agents—subject to legislative control—the statute construed.* The General Assembly having power to impose upon foreign insurance companies coming into this State to do business, such reasonable terms and conditions as it may deem proper, it has an undoubted right to make such companies responsible, not only for the acts of those who are in fact their agents, but of those who assume to act as their agents, and aid them in transacting their business.

8. Section 23 of the act in relation to insurance companies, provides "that the term 'agent' or 'agents,' used in this section, shall include an acknowledged agent, surveyor, broker, or other person or persons who shall, in any manner, aid in transacting the business of any insurance company not incorporated by the laws of this State." The intention of the statute is to make such companies responsible, not only for the acts of its acknowledged agents, etc., but also for the acts of all other persons who in any manner aid in the transaction of their business.

9. No doubt, the mere assumption of authority to act for an insurance company will not, of itself, charge the company with responsibility for the acts of the assumed agent. The company must in some way avail itself of such acts, so that the person performing them may be said to aid the company in its insurance business.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. SNYDER, Judge, presiding.

Messrs. BAKER, McNULTY & BAKER, for the appellant:

While a general insurance agent may often appoint sub-agents, a local insurance agent can not delegate his authority or appoint sub-agents when the exercise of judgment or discretion is required. May on Insurance, (1st ed.) sec. 126; *Rankle* v. *Insurance Co.* 6 Fed. Rep. 143; *Lynn* v. *Burgoyne,* 13 B. Mon. 400; *McClure* v. *Iron Co.* 4 Mo. App. 148; *Bank* v. *Norton,* 1 Hill. 501; *Summers* v. *Insurance Co.* 6 Can. 19; *Enos* v. *Insurance Co.* 15 Law Ins. J. 139.

A notice, real or constructive, of limitation of an agent's powers, will estop the assured from alleging acts in excess of such power. A notice of such limitation in the policy is sufficient. *Meserau* v. *Insurance Co.* 66 N. Y. 274; *Trustees* v. *Insurance Co.* 19 id. 305; *Catoix* v. *Insurance Co.* 33 N. J. 487.

Where the act is in excess of the real authority of the agent, the burden is on the insured to show it was within the apparent scope of his authority. That authority is not to be assumed from the mere declarations of the agent. *Bush* v. *Insurance Co.* 63 N. Y. 531; *Allen* v. *Ogden*, 1 Washb. 174; *Insurance Co.* v. *Rowell*, 52 Barb. 270; *Perkins* v. *Insurance Co.* 4 Cow. 645; *Miller* v. *Insurance Co.* 27 Iowa, 203; Ewell's Evans on Agency, 106; 34 La. Ann. 63.

An agency can not be proved by the mere declaration of a party claiming to be an agent, where the fact of agency is in issue. *Proctor* v. *Tows*, 115 Ill. 138.

Messrs. WISE & DAVIS, for the appellee:

Local agents of foreign insurance companies, who have power to insure, issue and deliver policies, and collect premiums, are clothed with all the powers of a general agent,—certainly so far as the public are concerned. Whipple & Smiley, possessing such powers, were general agents, and had the right to appoint Milne to solicit and procure insurance, and his acts are binding on the company. *Lightbody* v. *Insurance Co.* 23 Wend. 18; *Veile* v. *Insurance Co.* 28 Iowa, 9; *Insurance Co.* v. *Kennie*, 28 Gratt. 88; *Insurance Co.* v. *Gookey*, 33 Ohio St. 647; *Insurance Co.* v. *Maguire*, 51 Ill. 342.

Harry Milne had the right to make the contract, so far as appellee was concerned. The maxim, *delegatus non potest delegare*, has no application in this case. *Insurance Co.* v. *Fahrenkrug*, 68 Ill. 463; *Bodine* v. *Insurance Co.* 51 N. Y. 123; *Lingufeller* v. *Insurance Co.* 19 Mo. App. 252; *Cooke* v. *Insurance Co.* 7 Daley, 155; *Rossiter* v. *Assurance Association*, 27 Beav. 397.

Under section 23 of the act regulating foreign insurance companies, (Starr & Curtis, p. 1322,) Milne was an agent of the company. *Shosner* v. *Insurance Co.* 50 Wis. 575; *Alkan* v. *Insurance Co.* 53 id. 136; *Knox* v. *Insurance Co.* 50 id. 671; *Body* v. *Insurance Co.* 63 id. 157; *Bennett* v. *Insurance Co.* 70

Iowa, 600; *Lamb* v. *Lamb*, 6 Biss. 420; *Fad* v. *Insurance Co.* 6 Bush, 133; *Pierce* v. *People*, 106 Ill. 11.

Milne was permitted to solicit insurance, make contracts, fill up policies, deliver them, and collect premiums, in his dealings with the public. The public had a right to presume his acts bound the company. Presumed powers are not to be narrowed by limitation not communicated to the person dealing with him. *Insurance Co.* v. *Chestnut*, 50 Ill. 111; *Insurance Co.* v. *Maguire*, 51 id. 342; *Lightbody* v. *Insurance Co.* 23 Wend. 18; *Merchants' Bank* v. *State Bank*, 10 Wall. 644; *Insurance Co.* v. *Kelly*, 24 Ohio St. 345.

Although provision 6 in the policy provides that any person, other than the duly commissioned agent of this company, who may procure insurance, shall be deemed the agent of the assured, and not of the company, yet Milne, having acted for the company in procuring the insurance, is to be deemed the agent of the company, regardless of said provision in the policy. *Insurance Co.* v. *Ives*, 56 Ill. 402; *Insurance Co.* v. *Chipp*, 93 id. 100; *Pierce* v. *People*, 106 id. 22; *Insurance Co.* v. *Sammons*, 110 id. 166.

If the proofs of loss were not technically sufficient, yet the company, by retaining them, and writing the insured that it refused to pay because the property was vacant when destroyed by fire, stops the company from urging this point. *Suppiger* v. *Benefit Association*, 20 Bradw. 595; *Insurance Co.* v. *Whitehill*, 25 Ill. 466; *Insurance Co.* v. *Walsh*, 54 id. 164; *Insurance Co.* v. *Tucker*, 92 id. 64.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Stephen Ruckman against the Continental Insurance Company of the city of New York, praying for the reformation of a policy of insurance, and for a decree for the amount of the complainant's loss and damage by fire to the property insured. The policy in question bore date March 24, 1884, and insured the complainant,

for the term of three years, against loss or damage by fire, in the sum of $400 on his one-story, frame, shingle-roof dwelling house, and $600 on his log barn, situate in St. Charles county, Missouri. The following facts shown by the complainant's evidence are in no way contradicted:

The policy was obtained by the complainant from the defendant through the agency of one Milne, an employe of Whipple & Smiley, the defendant's local agents at Alton, Illinois. On the day next prior to the date of the policy, Milne came to the complainant at his place in St. Charles county, Missouri, and solicited said insurance. The complainant expressed a willingness to take out a policy on said buildings, but told Milne that he expected to have them rented, and that sometimes they might be vacant five, ten or fifteen days, and asked him if that would make any difference with the insurance. Milne assured him that if they did not remain vacant to exceed thirty days, the insurance would not be affected, and agreed that the policy should so provide, but that if the vacancy should continue for a longer period, it would be necessary for the complainant to notify the company and get a permit for a further period of thirty days. On these terms the complainant agreed to take the policy. The next day he went to the office of Whipple & Smiley for the policy and found Milne there alone, no other person being in the office. Milne thereupon took a blank policy, filled it up and delivered it to the complainant, and received from him the premium. The complainant is an illiterate man, not being able to read or write, and that fact was known to Milne at the time he filled up and delivered the policy. On receiving it, the complainant asked Milne whether the clause in relation to the vacancy of the buildings was in it and was told by him that it was, and the complainant had no knowledge that the contrary was the fact until after the destruction of the buildings by fire.

In point of fact the condition agreed upon was not in the policy, but among its conditions was one providing that if the

24—127 ILL.

buildings insured became unoccupied without the consent of the company indorsed thereon, the policy should be void. A tenant who went into possession March 1, 1885, continued to occupy the premises, using the house for a dwelling and the barn for keeping therein his domestic animals, his hay and other personal property, until October 21, 1886, at which date he moved out of the house leaving it unoccupied, and moved into another house about a quarter of a mile distant therefrom. On the first day of November, 1886, the house and barn were both destroyed by fire, the house at that time remaining unoccupied, the former tenant, however, still retaining the key to the barn, which he kept locked, and having therein a load of hay, a hay frame, twelve bushels of potatoes and some lumber. Proofs of loss were furnished by the complainant to the insurance company showing that the house was unoccupied at the date of the loss, and the defendant thereupon refused to pay the loss, basing its refusal upon the alleged breach of the condition of the policy relating to the occupancy of the buildings.

The cause was heard on pleadings and proofs and a decree rendered reforming the policy by inserting therein a provision that the buildings insured might remain vacant and unoccupied thirty days, but no longer, without notice to the defendant, and also decreeing that the defendant pay the complainant, within ten days, the sum of, $1049.50, with legal interest thereon from the date of the decree, together with costs of suit, and that in default of such payment, execution issue therefor. From this decree the defendant appealed to the Appellate Court where said decree was affirmed, and by a further appeal the defendant has brought the record to this court.

It is urged as a ground for the reversal of the decree that the complainant failed to perform the condition of the policy in relation to preliminary proofs of loss. It is not disputed that proofs were served consisting of a statement in relation

to the circumstances of the loss made by the complainant under oath, and a certificate by a justice of the peace residing in the vicinity of the buildings destroyed. It may be that these proofs failed in some particulars to answer all the requirements of the policy, but whether they did or not is wholly immaterial, since the defendant, on receiving the proofs, instead of pointing out the deficiencies therein and requiring a further statement and certificate, refused to pay the loss, placing its refusal wholly upon the ground that the condition prohibiting a vacancy of the buildings without notice and consent had been broken. Where proofs of loss are served and retained by the insurance company without objection, and the company refuses to pay the loss, placing its refusal upon some ground other than defects in the proofs, any further performance of the condition in relation to proofs is waived, and the company is estopped, when sued on its policy for the loss, to make any formal objections to the proofs. *Lycoming Fire Ins. Co.* v. *Dunmore,* 75 Ill. 14; *Williamsburgh City Fire Ins. Co.* v. *Cary,* 83 id. 453; *German Ins. Co.* v. *Ward,* 90 id. 550; *Phœnix Ins. Co.* v. *Tucker,* 92 id. 64; *Grange Mill Co.* v. *Western Assurance Co.* 118 id. 396; *Scammon* v. *Commercial Ins. Co.* 20 Ill. App. 500.

The ground, however, for a reversal of the decree upon which reliance is chiefly placed by the defendant is, that Milne was not the defendant's agent, and had no authority to stipulate on its behalf for a clause in the policy permitting the buildings insured to become and remain vacant and unoccupied for thirty days without invalidating the insurance. The contention is that Milne was merely an agent or employe of Whipple & Smiley, and that the maxim *delegatus non potest delegare* applies. Whipple & Smiley, though representing their principal in a particular locality or within a limited territory, and therefore called local agents, were in fact general agents of the defendant in the matter of issuing policies. They were not only appointed agents, but supplied with blank policies

properly signed by the company, which they were authorized to fill up, countersign and deliver to the assured. The rule is well established that this constituted them the general agents of the insurers in the matter of soliciting and accepting risks, agreeing upon and settling the terms of insurance, and carrying the same into effect by issuing the policies. *Pitney* v. *Glens Falls Ins. Co.* 65 N. Y. 6; *Georgia Home Ins. Co. Kinnier's Admx.* 28 Grat. 88; *Viele* v. *Germania Ins. Co.* 26 Iowa, 9; *Carroll* v. *Charter Oak Ins. Co.* 40 Barb. 292; *Ætna Ins. Co.* v. *Maguire,* 51 Ill. 342; May on Insurance, sec. 126.

Whipple & Smiley, possessing as they did the powers of general agents in the matter of making contracts of insurance and issuing policies, will be presumed to have possessed competent authority to stipulate for the insertion in the insurance contract with the complainant of the clause in question relating to the occupancy of the buildings to be insured. Such stipulation was clearly within the apparent purview of their agency, and unless there were limitations upon their authority of which the complainant had notice at the time the contract was made, the defendant can not now set up want of authority in them.

But it is said that the complainant was notified by the terms of the policy which he received that no agent of the insurance company had authority to enter into a contract of insurance upon any other terms or conditions than those embodied in the blank policies furnished by the defendant to Whipple & Smiley. Those blanks it is true contained the following condition: "It is further understood and made a part of this contract that the agent of this company has no authority to waive, modify or strike from this policy any of its printed conditions." That this clause can not have the effect here contended for is apparent from either of two considerations. At the time the contract of insurance was agreed upon, which was the day next prior to the delivery of the policy, the complainant, so far as the evidence shows, had no notice that

any such clause was contained in the company's blanks. And it is doubtful whether even the delivery of the policy to him was notice of its contents, when that fact is taken in connection with his inability to read it, and Milne's assurance that it was drafted in accordance with the contract. The other reason is, that the clause above quoted, when the printed conditions of the policy are subjected to the strict rule of interpretation which properly applies to them, neither is nor purports to be a limitation upon the power of the company's agents in agreeing upon and settling the terms of the contract of insurance. It is a limitation upon powers of agents to waive, modify or strike from the policy any of its printed conditions. A waiver is the voluntary yielding up by a party of some existing right, but until the contract is consummated, the company has no rights which are susceptible of waiver, nor can any condition be properly said to be modified or stricken from a policy until there is a policy, that is, until after the terms of the contract have been agreed upon and the policy issued. Clearly the clause in question was intended as a limitation upon the powers of agents to waive or modify the terms of a policy after it had been issued, and not upon their power to agree upon and settle the terms of the policy prior to its issue.

Whipple & Smiley being general agents, could they employ Milne to perform the duties of their agency and make his acts binding on the defendant? The facts are that Whipple was a gentleman advanced in years who gave but little attention to the duties of the agency. Smiley was an employe in the Alton National Bank, and during banking hours his duties usually required his attendance at the bank. Under these circumstances Milne was employed by the firm to assist them in their insurance business. He did the general office work, kept the books of the firm, conducted their correspondence, received the premiums paid at the office and to some extent collected those which were paid elsewhere, filled up policies all except countersigning, and the evidence tends to show that whenever

he could, he acted as solicitor for the firm in procuring insurance, and that when he had negotiated a policy with any particular person and expected him to call for it, he would so inform the firm, and a blank policy duly countersigned would be left with him to be by him filled up and delivered. The employment of Milne by the firm and the general nature of his duties seem to have been known to the defendant, as the defendant's State agent is shown to have frequently visited the office of the firm while Milne was in its employ.

As to whether under these circumstances general agents can delegate their authority so as to bind their principal by the acts of their sub-agent, the authorities are not altogether agreed. The position taken by defendant's counsel which is entitled to most consideration is, that agents to whom is committed duties which require the exercise of judgment and discretion can not delegate their authority, for the reason that such agency is from its nature personal, the principal having contracted for the personal skill and judgment of the agents selected. In support of this view we are cited to a very able discussion in *McClure* v. *Mississippi Valley Ins. Co.* 4 Mo. App. 148, where it is held that a general agent with power to issue policies of insurance, the signing and delivery of which involve passing upon the character of risks, and consequently call for the exercise of discretion and judgment, can not delegate his powers as such agent to another.

Without expressing any dissent from the doctrine of that decision and others which take a similar view, we are of the opinion that the present case falls within a quite different rule. In that case the question was whether any valid policy had been issued by the defendant to the plaintiff. The acts there challenged as having been performed by virtue of a delegated authority embraced the passing upon the character and desirability of the risk and its acceptance on behalf of the insurer, acts clearly involving the exercise of discretion and judgment. In the present case no question is raised as to the validity of

the policy as issued.    No fault is found with the character of
the risk, nor is the validity of Milne's acts by which it was
accepted and the policy executed in any way challenged.    The
defendant received the premium and keeps it, and proceeds
upon the assumption that the policy was properly issued and
correctly embraces the terms of a valid contract of insurance
with the complainant.    The defense is based solely upon an
alleged breach of one of the conditions of the policy, and the
question raised involving a consideration of Milne's authority
to bind the defendant relates merely to the clause as to the
occupancy of the buildings which he agreed to insert in the
policy.    We have to determine then whether Whipple & Smiley
could properly delegate their authority to Milne to that extent
only, no other question as to the delegation of their authority
being in issue.    We are unable to see that this was a matter
specially calling for the exercise of discretion or judgment.
The complainant's buildings, so far as the question of non-
occupancy was concerned, differed in no material respect from
all other buildings similarly situated.

The case comes more nearly within the principle of *Bodine*
v. *Exchange Fire Ins. Co.* 51 N. Y. 117.    There the original
policy provided that no insurance, original or continued, should
be binding until the actual payment of the premium.    The
defense was based upon the non-payment of the premium
upon a renewal receipt, and the plaintiff's claim was that the
clerk of the insurance agent who delivered to him the receipt
waived the prepayment of the premium.    The only question
was as to the authority of the clerk to make such waiver.    He
was the son of the insurance agent, and had for several years
been assisting his father in his insurance business, among
other things, by procuring policies and renewal receipts from
the company and delivering them to the insured.    In various
cases, including the one in question, he had, with the pre-
sumed consent and authority of his father, waived the prepay-
ment of premiums.    Such delegation of authority was held.

to be proper, upon the principle that the act of the clerk was the act of the agent, binding on the company just as effectually as if it were done by the agent in person. The doctrine of the foregoing case was cited with approval by this court in *Eclectic Life Ins. Co.* v. *Fahrenkrug,* 68 Ill. 463. See also *Lingenfelter* v. *Phœnix Ins. Co.* 19 Mo. App. 252.

In the present case the act of Milne by which he agreed to insert in the policy the clause in question relating to the non-occupancy of the buildings may be regarded as the act of Whipple & Smiley, and therefore binding on the company the same as though they had made the agreement themselves. The fact that they knew nothing of the agreement and gave no actual assent to it is immaterial, so long as it was within the apparent purview of their powers as agents, and also within the apparent purview of Milne's employment as their clerk and assistant.

But there is another and we think a conclusive reason why the agreement of Milne must be held to be binding on the defendant. The defendant is an insurance company organized under the laws of the State of New York, and doing business by its agents in this State under and by virtue of our statute in relation to such companies. The twenty-third section of the statute in relation to fire insurance companies, after fixing and defining the terms and conditions upon which insurance companies organized under the laws of other States may take risks or transact insurance business by their agent or agents in this State, provides as follows : "The term agent or agents used in this section shall include an acknowledged agent, surveyor, broker, or any other person or persons who shall, in any manner, aid in transacting the insurance business of any insurance company not incorporated by the laws of this State." 1 Starr & Curtis' Stat. 1322. The General Assembly having power to impose upon foreign insurance companies coming into this State to do business such reasonable terms and conditions as it saw fit, had an undoubted

right to make such companies responsible, not only for the acts of those who are in fact their agents, but of those who assume to act as their agents and in fact aid them in the transaction of their insurance business. That such was the intention of the statute seems too plain to admit of doubt. We placed this construction upon said statute in *People* v. *People's Ins. Exchange,* 126 Ill. 466.

Similar statutes have been upheld in other States and have there received the same construction we are disposed to place upon our own. A statute of Wisconsin provided that whoever solicited insurance on behalf of an insurance company, or made any contract of insurance, or in any manner aided or assisted in making such contract, or transacted any business for the company should be held to be an agent of such company to all intents and purposes. In *Schomer* v. *Hekla Fire Ins. Co.* 50 Wis. 575, the court, in construing said statute, say : "The obvious intention of the legislature is, to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority." Said statute was upheld and the same construction adhered to in *Knox* v. *Lycoming Fire Ins. Co.* 50 Wis. 671, *Alkan* v. *New Hampshire Ins. Co.* 53 id. 136, and *Body* v. *Hartford Fire Ins. Co.* 63 id. 157.

A statute of Iowa provided that any person who should solicit insurance or procure applications therefor should be held to be the soliciting agent of the insurance company. In *Bennett* v. *Council Bluffs Ins. Co.* 70 Iowa, 600, it appeared that an agent of the company who had authority to solicit insurance and issue policies, sent his clerk to solicit a risk and take an application, and the clerk knew that there was other insurance on the property, but the agent, who was ignorant of such other insurance, issued a policy and collected the

premium, and it was held that the company was bound by the knowledge of the agent's clerk, who, for the purposes of that policy, must, by virtue of the provisions of the statute, be regarded as the company's soliciting agent.

An attempt is made to distinguish our statute from those considered and construed in the cases above cited, because of the use of the word "acknowledged" in the phrase "acknowledged agent, surveyor, broker, or any other person or persons who shall in any manner aid in transacting the insurance business of any insurance company," etc. The contention is that the word "acknowledged" qualifies the entire clause, and that the statute therefore applies to no person who is not acknowledged by the insurance company as having authority to act for it in its insurance business. It is sufficient to say that the construction contended for is so forced and unnatural as not to possess even the virtue of plausibility. It would render the statute impotent and unmeaning by limiting its operation to those who would be agents of insurance companies without it. The manifest intention was, to make such companies responsible for the acts not only of its acknowledged agents, etc., but also of all other persons who in any manner aid in the transaction of their insurance business. Nor do we see anything inequitable or oppressive in such provision. Doubtless the mere assumption of authority to act for an insurance company will not of itself charge the company with responsibility for the acts of the assumed agent. The company must in some way avail itself of such acts, so that the person performing them may be said to aid the company in its insurance business. But after a company has availed itself of the acts of an assumed agent and thus adopted them as its own, there is nothing oppressive in assuming, as against such company, the existence of the relation of principal and agent, and charging the company with responsibility for such acts.

We are of the opinion that the circuit court properly decreed a reformation of the policy, and the property insured having been destroyed by fire, it was also proper for the court to enter a decree in favor of the complainant for the amount of his loss. We find no error in the record, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*