# THE ECLECTIC LIFE INSURANCE COMPANY

*v.*

# ALWINE FAHRENKRUG.

| 68 | 463 |
|----|-----|
| 127 | 376 |

| 68 | 463 |
|----|-----|
| 29a | 407 |
| 29a | 515 |

| 68 | 463 |
|----|-----|
| 32a | 436 |

| 68 | 463 |
|----|-----|
| 149 | 336 |
| 149 | 521 |
| 44a | 266 |
| 45a | 219 |

| 68 | 463 |
|----|-----|
| 175 | 290 |

| 68 | 463 |
|----|-----|
| 110a | ²194 |

1. INSURANCE—*evidence of fraudulent representations as to health of party insured.* The fact that the person whose life was insured was, shortly afterwards, stricken with disease, which ultimately caused his death, may or may not, according to the other proofs, afford evidence of fraud in representing him to have been in good health. Taken in connection with other evidence tending to show that the disease existed when the policy was applied for, it would be material, but standing alone, or in connection with evidence of previous good health, it is insufficient to raise even a presumption of fraud.

2. SAME—*payment to an agent—when binding.* Where an agent employed by an insurance company to take applications for insurance took the same, and afterwards delivered the policy and collected the first half-yearly premium, his authority so far not being disputed, and he afterwards represented himself as having authority to receive the premium for the second half year before the same was due, and received the same, giving a receipt for both payments, and the assured, through her agent, on inquiry at the office of the company, was informed by a clerk then in charge that the payment was all right, and could not be refunded, and the company, after notice, never repudiated such payment and notified the assured thereof until after the death of the party whose life was insured: *Held,* that the company could not avoid payment of the policy on the ground that the agent had no authority to receive the second premium.

3. AGENCY—*power of agent to bind—how determined.* An insurance company will be bound by the acts of their agents, if within the powers he is held out to the public as possessing.

4. If a premium on a policy of life insurance be paid and accepted by an agent who is apparently authorized by the company to receive it, the payment will be sufficient, whether it be in conformity with the terms of the policy or not.

5. SAME—*power of clerk of insurance agent to bind company.* A clerk of an insurance agent at a general office, whose duties, when the agent was present, was collecting, doing office work, sending notices, copying applications and letters, etc., under the agent's direction, in the absence of the principal agent will be regarded as agent for the company, so as to bind it by a notice received or information communicated in regard to the payment of premiums.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

This was an action of assumpsit, by Alwine Fahrenkrug against The Eclectic Insurance Company, on a policy of insurance upon the life of Christian Heinrich Fahrenkrug, the plaintiff's husband. The plaintiff recovered $1000 in the circuit court, being the amount named in the policy. The material facts of this case are stated in the opinion of the court.

Mr. THOMAS SHIRLEY, for the defendant in error.

Messrs. SANSUM & LEDDY, for the plaintiff in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

A reversal of the judgment of the court below is asked on two grounds: First, that the policy was caused to be issued by means of the fraudulent representations of the assured, in reference to the health of Fahrenkrug, upon whose life the insurance was effected; second, that the policy was forfeited for the non-payment of premium.

We think the evidence fails to show any false representations in relation to Fahrenkrug's health. It is, on the contrary, proved that he was in good health at and previous to the time when the policy was issued. The mere fact that he was, shortly after, stricken with the disease which ultimately caused his death, does not disprove the evidence of previous good health. The circumstance might, in connection with other evidence tending to show that the disease existed when the policy was applied for, be material; but, standing as it does, in the present case, unsupported by such evidence, it is insufficient to raise even a presumption of fraud. Cases are constantly occurring where those in perfect health on one day are, on the next day, stricken by fatal disease. We can not assume that the existence of disease after a policy is issued upon the life of a person, however short may be the time, is,

of itself, satisfactory proof of fraud in the assured. It may or may not, depending upon other facts in the case, be a circumstance tending to prove fraud.

The defendant is a non-resident corporation, having a general office in Chicago, which, when the facts transpired that are involved in the present suit, was under the control of one Johnson, whose official designation by the defendant was that of "manager." We are not informed as to the precise extent of his powers or scope of his duties. He was, however, regarded as a general agent, and had in his employ a clerk and a book-keeper. The office was indicated to the public by a sign, on which were, in conspicuous golden letters, the words, "Eclectic Life Insurance Company, August Johnson, Manager." One Stiller was authorized by Johnson to solicit applications for policies, to deliver the policies, when issued, on applications made through him, and collect the amount of premium named in the policies; and for such services he was to receive a commission of 40 per cent on the amount collected.

Application for the policy now in controversy was made through Stiller, and when it was issued he delivered it and collected the premium then due—$25.49. This was in the early part of May, and the next premium was, by the terms of the policy, due on the 17th of the following July. Some two days after the policy was delivered, Stiller again applied to the assured, and requested her to then pay him the premium due on the 17th of July, recommending that it should be done, and assigning as a reason that if her husband should die, and this premium not be paid, she would get nothing on her policy. She borrowed the money from a cousin of her's, and then paid Stiller the amount of the premium due on the 17th of July, $25.49, and obtained from him, as agent of the defendant, a receipt, embracing both payments. A few days after this, one Tiedmann, acting for the assured, went to the office of the defendant, in Chicago, taking with him the policy and Stiller's receipt, and asked that the July payment

be refunded to the assured, because it was not then due.   A clerk engaged behind a desk in the office, after looking over the papers, informed Tiedmann that he would have to wait until Johnson returned, who, he said, was then at Detroit, but would return in three or four days.   At the expiration of the time designated for Johnson's return, Tiedmann again repaired to the office, for the purpose of having the July payment refunded.   He was then informed by the clerk with whom he had previously conversed that Johnson had not yet returned, but that the money could not be refunded ; that the assured had elected to make the payment, and that it was "all right."

Johnson denies that the July payment was made to the defendant, and says that the policy was forfeited because of its non-payment.   The clerk in the office at the time Tiedmann called, in some respects contradicts Tiedmann's version, but he admits he told Tiedmann that Stiller had authority to collect.   We are inclined to think Tiedmann's version is entitled to most respect.   He is, to all appearances, disinterested, and his evidence is unequivocal, and to matters which there is every reason to suppose he would accurately remember.

The court instructed the jury, with reference to this evidence, as follows:

"The jury are instructed by the court, that if they find, from the evidence, that one Stiller was employed by the defendant to deliver the policy in question, and to receive a half year premium thereon, and that said policy was delivered by him in May, 1871, and a half year premium thereon then received by him, and that thereafter, during the same month, the said Stiller represented himself to the plaintiff or to her husband as having authority from the defendant to receive the premium from the plaintiff for the second half year, making up a full year's premium, and that, relying upon such representations, the plaintiff or her husband caused such pay-

ment to be made for a full year, and took from the said Stiller the receipt therefor offered in evidence by the plaintiff; and if the jury further find, from the evidence, that afterwards and during the same month the witness, Tiedmann, acting on behalf of the plaintiff, called at the office of the defendant in Chicago, and exhibited this policy and the receipt of Stiller, aforesaid, to a clerk of the company, then in charge of the office, and inquired of him in regard to second payment and receipt, and was then and there informed by such person in charge that it was all right, or words to that effect, then the jury are justified in finding, from this fact, that the plaintiff had a right to rely on the sufficiency of such payment, and to find that the same was binding upon the defendant, unless this jury also find, from the evidence, that the defendant afterwards, within a reasonable time, repudiated such payment to and receipt by said Stiller, and informed the plaintiff of such repudiation."

It is insisted that this instruction is erroneous; that, by the terms of the policy, the agents are prohibited from altering or discharging contracts, or waiving forfeitures.

This objection we do not deem tenable. The question in cases of this kind is not what power did the agent in fact possess, but what power did the company hold him out to the public as possessing. *F. and M. Ins. Co.* v. *Chestnut et al.* 50 Ill. 118; *The N. E. F. and M. Ins. Co.* v. *Schettler,* 18 id. 170; *Ætna Ins. Co.* v. *Maguire,* 51 Ill. 342. It is immaterial what may have been said in the policy in regard to the payment of the premium. It was within the power of the company, acting through its agents, to change entirely the mode of or dispense with the payments, as provided by the policy, and adopt a different mode and time of payment. It was said by COMSTOCK, J., in *The Trustees of First Baptist Church* v. *The B. F. Ins. Co.* 19 N. Y. 305: "A provision in a policy already executed and delivered, so as to bind the company, declaratory of a condition that premiums must be paid in

468    ECLECTIC LIFE INS. CO. v. FAHRENKRUG.    [Sept. T. ·

Opinion of the Court.

advance, manifestly has no effect, except to impart convenient information to persons who may wish to be insured. As such a provision in the policy in question could have no effect upon the delivered and perfect contract in which it was contained, so it could have none to prevent the same parties from making such future contract as they pleased. In any subsequent agreement for a renewal or continuation of the risk, it was competent for the parties to contract by parol, and to waive the payment in cash of the premium, substituting therefor a promise to pay on demand, or at a future day. Proof of such an agreement would have no tendency to contradict or to change the written policy already in force between the parties, and which would be wholly spent before the new agreement could take its place." See also *Meyers* v. *Keystone M. L. Ins. Co.* 27 Penn. 268. And, upon like principle, it can not be doubted that the parties might, by agreement, instead of deferring a payment to the time fixed in the policy, discharge it by a present payment. The execution and form of the receipt is of no consequence. It is, at best, but evidence of a fact which may also be proved by parol. The important thing is, the payment of the money, and if it be paid to and accepted by one who is apparently authorized by the company to receive it, it is sufficient, whether it be in conformity with the terms of the policy or not.

Stiller had unquestioned authority to solicit the application, to deliver the policy when it was issued by the defendant, and to receive the money then due. We are inclined to think that the fair presumption from this would be, that he might also receive such additional sums, due at a future day, as the parties might choose to pay; but we do not think, under the evidence, that it is necessary to place the case upon this ground. The defendant invited the public to its general office for the transaction of any and all business in which it was engaged. It was its duty to have some one there, so long as its office was kept open, empowered to transact business, or at least to

receive and give information in regard to its business. Those who were in charge of it, the public were authorized to assume, were its agents; and it is not to be presumed by the public that one in charge of the office would act in a matter relating to the defendant's business, about which he was unauthorized to act. That Johnson had ample authority is not questioned. It was necessary that he should have a clerk and a book-keeper to assist him in the business, and they were left in charge of it in his absence.

It was said, in *Bodine et al.* v. *Exchange Fire Ins. Co.* 51 N. Y. 123, by EARL, C., in delivering the opinion of the court: "We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them, and that they could not transact their business if obliged to attend to all the details in person; and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and to take payment of premiums in cash or securities, and to give credit for premiums, and to demand cash; and the act of the clerk in all such cases is the act of the agent, and binds the company just as effectually as if it were done by the agent in person. The maxim of *delegatus non potest delegare* does not apply in such a case."

This we conceive to be a correct statement of the law in such cases. Applied to the present case, it leaves no room for argument that the clerk with whom Tiedmann conversed in the office was, as to the communication then made, the agent of the defendant.

The general duties of the clerk were, as he swears, "collecting, doing office work, sending notices, copying applications and letters, etc., under Mr. Johnson's directions." In the present instance, the character of these duties was, from the circumstances, somewhat enlarged. Johnson had gone to Detroit, leaving the office open to the public for the transac-

tion of business, and in charge of the clerk and book-keeper. Communications, therefore, which, if Johnson had been present, would have been made to him, must, necessarily, be made either to the clerk or the book-keeper. The clerk acted, in this respect, and, so far as the public was concerned, properly enough. That, under these circumstances, he was so far the agent of the company as to bind it by notice received or information communicated, in regard to the payment of premiums, is, we think, clear. It could not be that parties would have to follow Johnson in his travels, or wait his pleasure, to communicate or receive information in this respect, when the defendant was keeping open its general office, in the charge of employees, for the transaction of its business. Moreover, a part of the duties expressly enjoined upon the clerk, as we have seen, was to give notices in respect to the payment of premiums and to make collections. Had a payment, therefore, been made to him, no question could be raised as to its sufficiency. Upon what principle, then, can it be said that information given to him that payment had been made to another was not information communicated to an agent in the line of his duty?

We are, therefore, of opinion, that the defendant is concluded by the notice given to the clerk by Tiedmann, that the premium due in July had been paid to Stiller, and that the plaintiff was justified in acting upon the information given to him, "that the money would not be refunded—that it was all right."

When the defendant was thus notified that payment had been made, it was its duty, if it was designed to repudiate the payment, to give prompt notice to that effect. Had this been done, the plaintiff would still have had ample time—of which she would, doubtless, have availed—to have made the payment in such manner as that it could not have been questioned. No such notice having been communicated by the defendant, it is now estopped from denying the sufficiency of the payment.

We perceive no error either in the giving or refusing of instructions, and the evidence authorizes the verdict, as rendered by the jury.

The judgment is affirmed.

*Judgment affirmed.*