# PENN MUTUAL LIFE INSURANCE COMPANY
## v.
## ANNA C. KEACH.

*Life Insurance—Action on Policy—Premium—Non-payment of—Forfeiture—Waiver—Course of Dealing—Parties—Special Interrogatories.*

1. When the practice of an insurance company and its course of dealing have been such as to induce the belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief.

2. An insurance company may permit its agent to waive a forfeiture notwithstanding provisions in its policies that agents shall have no such authority.

3. In the case presented, this court holds that the evidence warranted the jury in the conclusion that the insured and the agent had an understanding binding upon both, in regard to a certain premium; that payment thereof was waived and postponed until a date which was later than the death of the assured, and that the acts of the agent were binding upon his company.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of Greene County; the Hon. G. W. HERDMAN, Judge, presiding.

Messrs. JAMES R. WARD and H. H. C. MILLER, for appellant.

The provision for the release of an insurance company from liability on a failure to pay the premium when due, is of the very essence and substance of the contract of life insurance. Klein v. Insurance Co., 104 U. S. 89; Knickerbocker Life Ins. Co. v. Pemberton, 112 U. S. 696.

The result of the non-payment of the premium at the time stipulated in this policy was to forfeit the policy, unless the plaintiff established by a preponderance of the evidence that the company had legally waived the payment as it became due. The company was not bound to formally declare a forfeiture upon the non-payment of the premium as required by the policy; it is sufficient to set up the forfeiture by way of defense when sued. Catoir v. Am. Life Ins. & Trust Co., 33 N. J. 487; North v. N. A. Life Ins. Co., 5 Court Rev. 93, U. S. C. C.; North British Ins. Co. v. Steiger, 124 Ill. 87–88; Schimp v. Cedar Rapids Ins. Co., 124 Ill. 354.

Usage on the part of the insurance company, even if shown, of giving notice of the day of payment, and the reliance of the assured upon having such notice, is no cause for non-payment.

Usage of the insurers, not to demand punctual payment of a note, at the date of maturity, but to give days of grace, to-wit, "for thirty days thereafter," is not, when shown, a waiver of the clause of forfeiture. Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 252; Morley v. New York Life Ins. Co., 2 Woods' U. S. Cir. Ct. R. 661; Phelps v. I. C. R. R. Co., 63 Ill. 468.

Did the company waive the payment in cash, of the premium payable May 5, 1888, by the terms of the policy issued to John R. Keach, and postpone the payment thereof to a time beyond the date of his death? This allegation of the declaration implies an agreement or contract something more than acquiescence. Furthermore, the well established rule, as we have seen, is that the fact that the company may have previously indulged the assured by accepting his notes or payments of premiums which were long due, and by giving him notice when his premiums would fall due, furnished no excuse for his not meeting the other premiums promptly, in accordance with the terms of his policy, and such usage, if it existed, did not render it obligatory upon the company to continue to accept the notes of the assured or the premiums after they were long due, or to continue, in the absence of an express agreement, to give such notice. Phelps v. I. C. R. R. Co., 63 Ill. 468; Morley v. New York Life Ins. Co., 2 Woods' U. S. Cir. Ct. R. 661. Thompson v. Insurance Co., 104 U. S. 257; Insurance Co. v. Mowry, 96 U. S. 544; Schimp v. Cedar Rapids Ins. Co., 124 Ill. 354.

That the acceptance of notes for the quarterly premiums, accruing prior to May 5, 1888, upon the policies issued to John R. Keach and his wife, was a repetition of voluntary indulgences extended to Mr. and Mrs. Keach, at their request, by Mr. Hinman, solely upon his own responsibility and personal credit, and that Mr. and Mrs. Keach fully understood and participated in the transactions with that conviction, is clearly established by their own admissions contained in their letters given in evidence.

Mr. Hinman did not propose to "throw all payments over" to one time without knowing whether Mr. Keach was "likely·" to obtain a loan, and when. His words are: "If you let me know, I will arrange," etc., but not without knowing. The proposition for postponement was qualified and conditional. The condition was not complied with. A contract, therefore, was not consummated; their minds never met unconditionally upon the two points that were most material to Mr. Hinman, to wit: Will you get a loan? If so, when? Corcoran v.

White, 117 Ill. 118; Maclay v. Harvey, 90 Ill. 525; Olney
v. Howe, 89 Ill. 556; Davidson v. Porter, 57 Ill. 300; Esmay
v. Groton, 18 Ill. 483; Smith v. Wetherell, 4 Ill. App. 655;
Fox v. Turner, 1 Ill. App. 153.

Here all communication ceased.   Mr. Hinman never an-
swered Mr. Keach's inquiries and never sent the note for one
year for signature, and they never wrote him to inquire the
cause.   The time from February 28, 1888, to July 27, 1888,
when Mr. Keach died — five months — elapsed without re-
ceiving a word from Mr. Hinman, when previously letters had
passed monthly and oftener.   This was too great a lapse of
silence for them to reasonably expect that their notes would be
accepted, or for them to be induced to believe that their
insurance was safe.   They abandoned it—dropped it.

Messrs. HENRY C. WITHERS and PALMER & SHUTT, for
appellee.

Keach was notified at the commencement that he was to
deal with B. P. Hinman, general agent at Chicago, "whose
name was stamped on the policy."   And when Hinman, from
time to time, forwarded notes for signature, and accepted
notes instead of cash for premiums, and also disclosed to
Keach that such notes, or some of them, had been forwarded
to the home office of the company, Keach had the right to
infer that Hinman had full authority to take such notes.
Union Mutual Life Ins. Co. v. Slee, 110 Ill. 40.

The company having adopted this course of business, should
have continued it or given reasonable notice to the contrary.
The company, in accordance with the course of business so
adopted, should have forwarded a note for the amount of
premiums falling due May 5, 1888.   If it had done so a note
would have been given.   It was the fault of the company that
such note was not given.   The company could not suddenly
and without notice change its course of business and then
claim a forfeiture as a result of its own misconduct and neg-
lect.   Com. Ins. Co. v. Spankneble, 52 Ill. 53; Atlantic Ins.
Co. v. Wright, 22 Ill. 463.

" If the practice of the company and its course of dealing
with the insured have been such as to induce a belief that so

much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief." Chicago Life Ins. Co. v. Warner, 80 Ill. 413; May on Insurance, Sec. 361, *et seq.*

A custom or mode of business once begun must be continued or notice given of a change. Forfeitures are odious, and there must be no case of management or trickery to entrap a party into a forfeiture. Insurance Co. v. Pottger, 33 Ohio, 459.

In view of the company's dealings with him, Keach had reasonable cause to expect and rely upon a note being sent him for signature and the usual postponement of cash payment, and the company is estopped from setting up a forfeiture of the policy for the non-payment of cash May 5, 1888. Insurance Co. v. Eggleston, 96 U. S. 572; Insurance Co. v. Norton, 96 U. S. 234.

An insurance company may waive any condition of a policy inserted therein for its benefit, and evidence is admissible as to its practice in allowing its agents to extend the time of payment of premiums and premium notes, and the jury, upon such evidence, may find whether he was authorized to make the extension, and if so, whether the extension was, in fact, made. Insurance Co. v. Norton, 96 U. S. 234.

In case of Phœnix Mut. Life Ins. Co. v. Doster et al., 106 U. S. Rep. 30, Mr. Justice Harlan has rendered a clear and able opinion approving the two cases above.

WALL, J. The appellee recovered a judgment against the appellant in an action of assumpsit upon a policy of insurance on the life of John R. Keach. The declaration sets out the policy, and is in the ordinary form except as to the following averments: "And the plaintiff avers that the said John R. Keach, during his lifetime, at all times complied on his part with all the covenants and conditions imposed upon him by the terms and provisions of said policy, and paid all premiums required to be paid by him except the premium of $82.90, becoming due May 5, A. D. 1888; and the plaintiff avers that

the payment of said premium, in cash, on the 5th day of May, A. D. 1888, was waived by said company and postponed to a period of time beyond the date of the death of the said John R. Keach, and at the death of the said John R. Keach, the said policy was in full force."

The death of the assured occurred July 27, 1888, and unless the premium maturing May 5th of that year, which was not paid, was waived and postponed as above alleged, the company was not liable. The main and, indeed, the only important question was as to such waiver and postponement. The policy was dated November 5, 1885, for $5,000, and was conditioned, *inter alia*, upon:

"The payment to the company, at its said home office, of the sum of $82.90, at the date hereof, and of the quarter annual premium of $82.90, at or before three o'clock P. M., on the 5th day of November, February, May and August, in every year during the continuance of this contract."

At the same time another policy was issued for the same amount, and, excepting as to the rate of premium, on similar terms, upon the life of appellee, Anna C. Keach (wife of said John R. Keach), the beneficiary in the policy in suit. There were stringent conditions as to the payment of the premiums *in cash* at the appointed times, and for forfeiture in a case of failure therein, and to the effect that no agent should have power on behalf of the company to make or modify that or any contract of insurance, or to extend the time of payment of a premium. The home office of the company was in Philadelphia, and its affairs in Illinois were under the management of its general agent, B. P. Hinman, whose office was in Chicago.

Although the premiums were payable in cash by the express terms of the policy, there never was a cash payment made. All were made by notes, drawn at different times, and for amounts covering the sums next maturing, with interest. These notes were payable to Hinman, and were by him indorsed either to a bank in Chicago or to the local bank of the insured at Carrollton. It was the habit of Hinman to send the notes to the assured for their signatures, and when

he received the notes so executed he would send them the " renewal receipts," so called, for the premiums. They evidently relied upon him to attend to this matter, and he was not only prompt but urgent in so doing. The notes were not all dated at the same time relatively as the receipts, but this was wholly controlled by him. It appears that while the assured had large landed interests from which, when crops were good, the income was very considerable, yet they were always pressed for ready money, and that but for his urgency and solicitation they would not have continued to carry their policies. The record contains a great many letters which passed between the parties, bearing strongly upon the facts already stated, but all need not be here quoted. On the 6th day of February, 1888, Hinman wrote as follows :

" J. R. KEACH, ESQ.

" *Dear Sir*—Will you kindly see if Mr. Pierson does really pay the note, and let me know as soon as you can—by return mail, if possible. At the same time let me make a suggestion; suppose you make your premium payable annually; the rate is less, and I can accommodate you just as easily and with less frequent annoyance. See when you wish it payable and let me know. Mr. Pierson writes me that he thinks you will get your loan. Truly, etc.,

" B. P. HINMAN."

On the 28th of February, 1888, he again wrote :

" MR. AND MRS. J. R. AND A. C. KEACH.

" *My Dear Sir and Madam*—Would it not suit you better to pay but once a year ? Is there not a time when money is likely to come in ? If you let me know, I will arrange to throw all your payments over to that time. Write me. Truly, etc.,

" B. P. HINMAN."

To which was this reply :

" KEACH'S RANCH, ILL., March 6, 1888.

"B. P. HINMAN, ESQ.

" *Dear Sir*—Your favor of the 28th ultimo, came to hand. Your kind offer would suit us very much better than the

present mode. Could you include the last note given, if not, make out the note for one year and send it for signature.

"We have decided to rent out our farm to several renters to keep out expenses and the chances of bad crops. Will have nearly 2,000 acres in cultivation to look after for our rent. Yours truly,

"JOHN R. KEACH."

It does not appear that any further correspondence occurred, or that any further action was taken on either side, with reference to the premium maturing May 5, 1888, or to the giving of a note to cover the premiums for a year to come; but we find that Hinman wrote to the local bank on the 26th of April, 1888, as follows:

"ORNAN PIERSON, ESQ.

"*Dear Sir*—Draw on me for $10 and take care of that Keach note on 29th; don't let it come back. They give annual notes hereafter. Truly, etc.,

"B. P. HINMAN."

And on the 1st of May, 1888, as follows:

"FRIEND PIERSON:

"I wrote you last week about the Keaches and their note, to draw on me for $10 as before, and not let the note come back. They propose to pay annually hereafter and not have this quarterly occurrence. Truly, etc.,

"B. P. HINMAN."

The omission of the assured to follow up the matter may be easily accounted for, as they were accustomed to depend upon Hinman to prepare and forward the notes to them for execution, and as they had indicated a willingness to change the mode of payment from quarterly to annual, and had requested him to "make out the note for one year, and send it for signature," in case he did not wish to include the note he then held for the February premium. In view of the former course pursued and the never failing disposition shown by him to keep the insurance alive by accepting their notes which, though slow, he considered good (and they were all paid, though some of them not until after the death of John R. Keach), and of the fact that he had proposed the plan of annual payment as

far back as May 11, 1886, in a letter of that date, they were justified in expecting that he would, in due time, send them the note for the annual payment including the May premium, for their signature. It is clear that he intended to do so, as late as May 1st, only four days before that premium was due; and there is evidence tending to show that the note was not sent, because of mere neglect on his part. In his testimony he asserted that he did not intend to send it, as he had become weary of conducting the business in that way, though he gave them no notice of his change of purpose; and on cross-examination he could not remember saying to Mrs. Keach at her home in August, 1888, that he had forgotten it, and was himself to blame for not sending the note. Mrs. Keach and another witness, entirely credible, testified that he did so state, and this contradiction goes very strongly to prove that the omission was accidental rather than intentional. It appears from his letters, as well as from his testimony, that the home office was aware that he was taking notes for the premiums; and on one or two occasions he sent the notes to the home office. He always avowed that in so taking notes he was acting on his own personal account, and was himself assuming the burden, but it is not probable this would have been done on his part or tolerated by the company unless he and the company found it worth while to do so; and from the constant and regular course pursued it was to be presumed that the practice would be continued until notice to the contrary. When the practice of an insurance company and its course of dealing have been such as to induce the belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to act upon such forfeiture as against one in whom their conduct has induced such belief. C. L. I. Co. v. Warner, 80 Ill. 410 ; May on Insurance, Sec. 361.

It is well settled that an insurance company may authorize its agent to waive forfeitures, and that it is not bound to act upon the declaration in the policy that agents have no such authority. Such provision is for the benefit of the company, and whatever may be contained in the policy as to the mode

and time of payment, the company may waive it, and with the consent of the assured, adopt an entirely different mode and time. E. L. I. Co. v. Fahrenkrug, 68 Ill. 463; Home, etc., Insurance Co. v. Myer, 93 Ill. 271; Insurance Co. v. Newton, 96 U. S. 234.

We are of the opinion that the jury were clearly warranted in the conclusion that the assured and the agent had an understanding binding upon them both, in regard to the premium due May 5th, that it was waived and postponed until a date which was later than the death of the assured; nor can there be any serious controversy that the conduct of the agent herein ought to bind the company. This disposes of the chief point in the case. All others are minor and incidental.

It is urged that it was error to admit the letters written by Hinman to the local bank, dated April 26th and May 1st, because the assured knew nothing of them and did not act upon them. As we have shown, the assured had abundant reason for supposing Hinman could be relied on to forward the notes, and that no advantage would be taken, if he was so relied on. These letters were merely the declarations of Hinman to a third party, showing that he so understood and intended. They were declarations made while he was engaged in the business of the company, and were competent evidence. Nor is there anything in the objection that the notes were not all paid by the assured in his lifetime. They were taken as money, receipts were given on the faith of their value and obligation, and they were paid in the end. Counsel in their brief make a general objection to the action of the court in giving instructions three and four for the plaintiff, and in refusing instructions asked by the defendant. No particular grounds of objection are stated, and after reading the whole series given on both sides, we find nothing substantially wrong or wanting therein. The law appears to have been presented fairly and intelligently, and while there may be some occasion for verbal criticism, we discover no error of substance. Equally untenable is the objection that the court refused to submit to the jury five questions or special interrogatories. Those questions called for answers

which would have settled nothing of themselves and would not have aided the court in rendering judgment. They were not as to the ultimate facts upon which rested the rights of the parties, but as to mere evidentiary facts, which, in connection with others, would have more or less value in determining the ultimate facts. The court properly refused to submit them. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132; T. H. & I. Co. v. Voelker, 129 Ill. 540.

No other points are argued in the brief of appellant. The judgment will be affirmed.

*Judgment affirmed.*