# Globe Mutual Life Insurance Association v. Joseph Meyer, Administrator.

### Gen. No. 11,759.

1. PREMIUM—*presumption as to payment of.* The delivery of a policy of insurance is *prima facie* evidence that the premium mentioned therein has been paid.

2. PREMIUM—*what waiver of prepayment of.* The unconditional delivery of a policy of insurance is a waiver of the prepayment of the premium provided for therein.

3. INSURANCE POLICY—*what part of.* A due bill attached to an insurance policy, executed at the same time with it, constitutes a part thereof.

4. APPLICATION FOR INSURANCE—*when statements contained in must be construed most strongly against the insurer.* When the statements are in the handwriting of the medical examiner of the insurer, they will be taken most strongly against it.

5. APPLICATION FOR INSURANCE—*when statements in, will not defeat recovery.* In this case the state of the application for the policy was held not such as to defeat a recovery upon the policy.

6. OFFICIAL RECORDS—*when certified copies of, incompetent.* A certified copy of official records, purporting to show the cause of the death of an individual, is incompetent, where such copy contains matter and documents not required to be kept by the statute as official records.

7. ABSTRACT—*effect of insufficiency of.* An insufficient abstract is in itself ground for affirmance.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed February 9, 1905. Rehearing denied March 9, 1905.

M. H. HOEY, for appellant.

CHRISTIAN MEIER and PAUL C. MEIER, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This was a suit by appellee against appellant on a policy of insurance issued by appellant on the life of Frank Haselbauer, appellee's intestate. The suit was tried in the Circuit Court, on appeal by appellant from the judgment of a justice of the peace, and appellee recovered judgment for $182.95, from which judgment this appeal is taken.

The contentions of appellant's counsel are : (1) that plaintiff did not prove payment of premiums; (2) that appellee's intestate falsely answered, in his examination by the medical examiner, that his brother died at the age of ten years, when his age at the time of death was twenty or twentyone years; (3) that the court erred in excluding certain evidence offered by appellant; (4) that the court erred in giving certain instructions, and in refusing to give certain instructions. These contentions will be considered in the order stated.

The policy provides as follows: "In consideration of the application for this policy, which is hereby made a part hereof, and of the sum specified in column 4 above, to be paid before this policy shall take effect, and of the payment (in advance) of the sum specified in column 3 above, on or before the first Monday of each month during the continuance of this policy, does receive Frank Haselbauer as a member of this association and issue this policy of insurance."

Column 3 is headed "Monthly Rate," in print, under which is written " 75 cents." At the head of column 4, in print, is the following : " Proposition of month's premium from date of policy, where policy is not dated on first Monday of any month, until first Monday of succeeding month." In writing under this printed heading is " 57 cents."

We regard the delivery of the policy to the insured as *prima facie* evidence that the sum mentioned in column 4, 57 cents, was paid, the presumption being, as we think, that appellant would not have delivered the policy without payment of that sum. But on the hypothesis that it was not paid, the delivery of the policy was a waiver of its payment in advance of delivery. In 1 Joyce on Insurance, sec. 79, it is said : " Where the contract is otherwise complete, an unconditional delivery of the policy operates as a waiver of the prepayment of the premium, notwithstanding an express provision therein that the company shall not be liable until the premium is actually paid," citing numerous cases. See, also, to same effect, Gosch v. State Mut. Fire

Ins. Ass'n, 44 Ill. App. 263, 266, and Eclectic L. Ins. Co. v. Fahrenkrug, 68 Ill. 463, 467–8.

Attached to the policy, and made part thereof, by reference, and in evidence, is a note or due bill of the same date as the policy, made by the assured to the appellant. The due bill reads as follows:

"Due to the Globe Mutual Life Insurance Association, of Chicago, the sum of One Hundred Eight 05 Dollars, as follows: Ninety-nine 05-100 Dollars, being the single premium due bill, and Nine 00-100 Dollars, being one year's premiums on policy of insurance No. 4840, issued to me on the 13th day of June, A. D. 1898, subject to the following conditions:

(Policy Clerk is hereby authorized to insert number and date of policy when issued.)

On account of the low installment premiums at which the said Globe Mutual Life Insurance Association has agreed to issue the policy aforesaid, I, the undersigned, and insured under said policy, hereby agree that if the said policy should become a claim by death before the installment premiums paid thereon equal the sum due, then, in such event, the difference between the sum due aforesaid, and the sum of the installments paid, shall be charged against me, or my policy as an indebtedness, and deducted from my policy aforesaid, when it becomes a claim. In case a policy is not in full benefit from its date, only the same proportion of the due bill will be deducted as the policy is in benefit. For example, if the policy is only in one-third benefit when the insured dies, only one-third of the due bill will be deducted; otherwise, and in the event of lapse or surrender of said policy, this due bill shall be void and of no effect."

The due bill and policy, having been executed at the same time, are one contract. 2 Joyce on Ins., sec. 1203.

This due bill, as shown by its terms, is for all premiums for one year from the date of the policy, namely, from June 13, 1898. The insured died May 9, 1899, so that the due bill includes more than all the premiums payable up to the time of his death. There is no provision in the policy for suspension of the risk during non-payment of the due bill, nor of forfeiture for its non-payment. The sum insured is $291, and from this sum $108.05, the amount of the due bill, was deducted, which was in accordance with

the contract between the parties and the law.    2 Joyce on Ins., sec. 1237.    Appellant having given credit for premiums, by taking the due bill, cannot now be heard to contend that the premiums were not paid.

The insured, when asked by the medical examiner the age of his deceased brother, answered ten.    Ten what does not appear.    We cannot assume, as does appellant's counsel, that ten means ten years.    Even in the case of a verdict of a jury, when the verdict, in assessing damages, or finding the debt, merely states a number, without words or mark signifying what the number stands for, the verdict is so insufficient that judgment cannot legally be entered on it. Avery et al. v. Babcock, 35 Ill. 175, and cases cited.    The figure 10, standing alone, indicates merely ten units.    The insured did not answer ten years.    In answer to the question, "Cause of death," referring to the death of the insured's brother, the insured answered, "Don't know." There is no evidence in the record that the insured knew the cause of his brother's death, except that of the witness Engle, who testified that he heard the assured tell the cause of his brother's death, and the question whether he knew was for the jury to decide.

The following questions were put to the assured by the medical examiner:

"Has either of your parents, or any brother or sister, died of, or been afflicted with consumption, or any pulmonary disease?"

"Are any of your brothers or sisters, aunts or uncles, at present suffering from consumption, or any other hereditary disease?    If so, please specify."

These questions are in a bracket in the document showing the medical examination, with a blank space between them of one-eighth of an inch.    The bracket next to the right of the bracket in which the questions are, is headed in print: "C.    State relationship."    Under this heading, and immediately opposite the space between the questions, is the word "No."    In the bracket containing the questions there is no answer.    The writing is by the examiner, and there-

fore must be taken more strongly against appellant. Manifestly, in view of where the word " no " is on the paper, it purports to be an answer to the heading, " State relationship." But, on the hypothesis that it is not an answer to the heading, it cannot be told to which of the above quoted questions it is an answer. It is not in the bracket in which the questions are, nor opposite either of them, but opposite the blank space between them, without anything indicating that it is an answer to both of them. In this state of the case, the court properly instructed the jury, by the fifth instruction, "that there is no statement in the said medical examiner's report which can be by them properly considered as an answer to the question: ' Has either of your parents, or any brother or sister died of, or been afflicted with consumption, or any hereditary disease,' and therefore they should not find that any false statement has been made in said report to that question."

Appellant's counsel offered in evidence a certified copy from the record of deaths, including the physician's report of the cause of death of John Haselbauer. The physician reports, to the best of his knowledge and belief, that the chief and determining cause was " phthisis." Included in the certified copy offered by appellant's attorney is, " Undertaker's report of death," in which is stated the name, place of birth, age, etc., of the deceased.

In Howard v. Ill. Tr. & S. Bank, 189 Ill. 572, cited by appellant's counsel, the court say: " Registers of births, deaths and marriages made pursuant to the statute, and *within its requirements*, are admissible in evidence, to prove the fact recorded." There is no requirement in the statute that undertakers shall make any reports of death. The statute only requires physicians and accouchers, or when neither physician or accoucher is in attendance, then report shall be made by the parent, or, if none, by the nearest of kin not a minor, or, if none, by the resident householder where the death shall occur.

The assured died May 9, 1899, and the statute on the subject then in force was the act of 1877, Hurd's Rev. Stat. 1899,

C. 126a, p. 1604. There being no requirement in the statute for an undertaker's report, that report was incompetent. Appellant's counsel offered the entire matter certified, and we think the court did not err in ruling against the offer, on objection by appellee's attorney. That the offer included the undertaker's report is apparent. The offer, as shown by the abstract, was as follows : Mr. Hoey: " I now offer in evidence a certified copy of the records of the county clerk, showing the date and cause of death of John Hasel-bauer." The date of death is stated in the undertaker's report, but not in the physician's. But had the physician's report of the cause of death been admitted in evidence, it would not have tended to prove that the cause was known to the assured. These questions were asked Andrew Engle, witness called by appellant:

Q. " Did he ever tell you, in any one's presence, what was the cause of his brother's death ?" A. " Yes, sir."

Q. " What did Frank say was the cause of his brother's death ? "

The court sustained an objection to the last question. The first question was asked with reference to the answer of the assured, in the medical examination, that he did not know the cause of his brother's death, and the answer to said first question, " Yes, sir," was properly admitted. The second question, as to what the deceased said was the cause of his brother's death, was, as we think, properly excluded. The material thing was, whether he knew the cause, and as to that, the witness was allowed to answer. We find, by inspection of the record, that the abstract is in great part merely an index to the record. For instance, the testimony of a Mrs. Wallinger, which occupies a little more than two pages of the record, and which is material, is not sufficiently abstracted, only two questions and the answers thereto being in the abstract. Counsel, as shown by the abstract, relied, in the trial court, on certain matter which he said was contained in the proofs of death. The proofs are not abstracted. The abstract contains the following : " Statement of adm., that Frank Haselbauer died May 9, 1899, of

consumption; that mother and brother of the insured died of consumption." This is all the abstract contains as to the statement. In the statement of the administrator the following question and answer occur:

Q. " Has father, mother, brother or sister ever had consumption, or any pulmonary, scrofulous, or constitutional disease, or insanity. If so, give name, relationship, cause of death, and date of death?"

A. " Mother and brother, possibly."

It is impossible to tell to what part of the question the answer applies. That the administrator did not intend to state that the father and mother of the assured died of consumption, is evident from a prior question and answer in the statement. Asked the cause of death of the father and mother of the assured, the administrator answered, " Heard it was consumption. Don't know."

The abstract is not only insufficient, but, in the particular just mentioned, is misleading. This alone is sufficient to warrant an affirmance of the judgment, but we do not base our decision on that ground.

We find no substantial error warranting a reversal in the giving or refusal of instructions, and the judgment will be affirmed.

*Affirmed.*

Mr. Justice Brown took no part in the consideration of this appeal.