## Mary Ann Enright, Appellee, v. National Council Knights and Ladies of Security, Appellant.

### Gen. No. 15,508.

1. INSURANCE—*effect of failure to answer question propounded by application.* If an applicant for insurance does not answer a question propounded to him, the courts will not supply an answer.

2. INSURANCE—*when answers contained in application constitute representations and not warranties.* *Held,* that the answers given by the insured in his application to questions propounded therein, were, under the authority of Minnesota Mutual Life Insurance Co. v. Link, 230 Ill. 273, representations and not warranties.

3. TRIAL—*when remarks of counsel will not reverse.* Remarks of counsel, even though improper, will not reverse unless in the opinion of the court they contributed materially to the result reached by the jury.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. W. N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed April 18, 1911.

**Statement by the Court.** Suit was brought upon a

366     APPELLATE COURTS OF ILLINOIS.

Enright v. National Council K. & L. of Security, 161 Ill. App. 365.

beneficiary certificate issued by the appellant to Thomas J. Enright, for $3,000, the certificate providing that if the member should die within twelve months and more than six after its issuance, the Society should be required to pay but 70 per cent. of the amount of the certificate. The certificate was issued in August, 1907, and Enright died in March, 1908. The certificate had the usual recital making the application for membership and the report of the medical examiner part of the contract, and further provided that "each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of the order to the member or his beneficiaries." The certificate further provided that "if the application and medical examination shall not be true in each and every part thereof, then this beneficiary certificate shall as to said member, or his beneficiaries, be absolutely null and void."

The application form, which appears to have been made out by the medical examiner, and to have been signed by Thomas J. Enright, purports to give answers to many questions regarding the health of the applicant and of his parents, brothers, sisters and other relatives. Under the words "Family History" the father's age is placed at fifty-five years and his health said to be good; the mother's at fifty-eight years, and health good; the ages of two brothers are placed respectively at thirty-six and twenty-six, and their health stated to be good; and the ages of two sisters at twenty-one and twenty-seven, and their health is also stated to be good.

It was shown at the trial that Thomas J. Enright, to whom the certificate was issued, died of the disease commonly known as consumption, of four months' duration, and that a contributing cause of the death was a disease of a valve of the heart. It further appeared that Oliver Enright, a brother of Thomas J., had died about four years before the issuance of the certificate, of what is commonly known as acute consumption, the

duration of which was four months and fifteen days, and that a contributory cause or complication was dis- ponea, which was of fifteen days' duration; also that a first cousin of Thomas J. Enright died, less than three years before the application, of acute pulmonary tuberculosis and pneumonia.

Question No. 19 in the application reads, "Brother dead?", against which no answer was placed.

Question No. 21 involves several queries: "(a) Have either of your parents, or any of your uncles, aunts, brothers or sisters or other blood relatives been afflicted with consumption, scrofula, cancer, insanity, epilepsy, gout, rheumatism or any other hereditary disease?", the answer to which was "No." "(b) Has any member of your household either died during the last six months, or suffered from any chronic cough or lung disease? If so, give particulars." An- swer, "No." "(c) Have you nursed a consump- tive?" Answer, "No." "(d) Which of your parents do you most resemble?" Answer, "Father."

Instructions to the jury were asked by the defend- ant, and given. No instructions were asked on the part of the plaintiff. The jury found a verdict of 70 per cent. of the amount of the certificate, with interest, the member having died more than six months and less than twelve months after the delivery of the cer- tificate.

A. W. FULTON, for appellant.

FRANK F. ARING, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

We are asked to reverse this case because, as it is claimed by the appellant, untruthful answers were made in the application. No answer appeared to the question, "Brother dead?", but it is urged by the ap- pellant that we should treat this fact as though the an-

swer were "No." We cannot agree with this contention. We think there is no more reason for inserting this word than the word "Yes." Globe Mutual Life Insurance Co. v. Meyer, 118 Ill. App. 155.

It is claimed by the appellant that answers to all of the questions in the application constituted a warranty on the part of the assured. The certificate in this case was similar to that in the case of Minnesota Mutual Life Insurance Co. v. Link, 230 Ill. 273. On the authority of the case last cited, we hold that the statements in the case before us were representations and not warranties.

It will be noted that the parents of the deceased were living at the time of the issuance of the policy, one being fifty-five and the other fifty-eight years of age, and there appears in the record no testimony tending to disclose that they were not in good health. The representation of the member was that neither his parents nor other blood relatives had been afflicted with consumption, scrofula, cancer, insanity, epilepsy, gout, rheumatism or any other hereditary disease. The evidence disclosed that a brother had died of acute miliary tuberculosis, but it further appeared that the duration of this disease was four months and fifteen days, and that there was another contributing cause of his death. The short duration of his illness would, it seems to us, indicate that the disease of consumption was not hereditary in him, especially in view of the fact that both of the parents were living and upwards of fifty-five years of age, but rather that the disease was acquired from causes against exposure to which we are so constantly warned by health authorities. A first cousin also was shown to have died from pulmonary tuberculosis and pneumonia, but her illness also was of but four months' duration; and this does not indicate to us that the disease was hereditary, and that therefore the answer to the question was false. Such being our view of the matter, there is no occasion to discuss the testimony with reference to the manner in which the

statement was prepared by the doctor who made the examination, and signed by the member, except to say that it apparently was hurriedly prepared, and it was not claimed by the doctor that he read it to Enright before the latter affixed his signature, or that Enright read it.

Complaint is made of the closing argument to the jury by appellee's attorney. We have carefully read the abstract, and it does not disclose that any objection was made that was not sustained by the court, except as shown by the following:

"MR. ARING: There is the contract, three thousand dollars in big numbers. Down at the bottom here seventy per cent., in very fine print, where you have got to put your specs on to see it, some of you old gentlemen may, it is right here. I don't see a word about it—

"MR. FULTON: I object to that, to these remarks, and would like to have a ruling on it, the size of the print—

"THE COURT: I do not see any objection to commenting on the size of the print.

"MR. FULTON: Yes, he is drawing the inference here that it is purposely put in fine print while the other is in large print. That has been held to be improper.

"THE COURT: I don't see why a man can't comment on the size of the print as well as on the size of the paper.

"MR. FULTON: It is the inference he is drawing that I take exception to.

"THE COURT: I am not ruling on the inference. I am ruling on what he said.

"MR. FULTON: We except to the ruling of the court."

We see no reason for reversing the judgment because of this occurrence. Even if the remark was improper, which we do not hold, it was not of such a character, in our opinion, that it contributed materially, if at all, to the result reached by the jury. In the case of

370 APPELLATE COURTS OF ILLINOIS.

Woman's T. B. Assn. v. Mut. Res. Contract Co., 161 Ill. App. 370.

the People v. McCann, 247 Ill. 130, the Supreme Court held, as it had in substance in many previous cases, that although improper remarks and improper conduct of attorneys in their argument to the jury are to be condemned in every case, they will not be held to be ground for reversal except where the evidence is such that the court is of the opinion they contributed to produce the verdict.

*Affirmed.*