PATRICK W. CULLINAN, as Commissioner of Excise of the
State of New York, Appellant, v. HARRY J. BOWKER,
Defendant, and THE ÆTNA INDEMNITY COMPANY,
Respondent

PRINCIPAL AND AGENT — WHEN AUTHORITY OF PRINCIPAL CANNOT
BE DELEGATED — LIQUOR TAX LAW. A surety company which has
appointed an agent " to execute and deliver and attach the seal of the
company to any and all bonds to be filed   *   *   *   under the Liquor Tax
Law," the bonds to be valid only when signed by such agent, is entitled
to his personal judgment in respect to issuing bonds, and he cannot dele-
gate his power to a clerk in his office; where, therefore, a county treas-
urer, with knowledge of the agent's authority and in his absence, accepts
a bond issued by his clerk, who had been authorized so to do, and who
stated that the agent would sign it upon his return, and in the mean-
time the certificate on the application for which the bond had been issued
had been forfeited by the principal for a violation of the Liquor Tax Law,
the company is not liable on the bond, although upon his return and
in ignorance of such forfeiture the agent affixed his signature to the bond.
    Cullinan v. Bowker, 88 App. Div. 170, affirmed

(Argued November 30, 1904; decided December 30, 1904.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
November 25, 1903, reversing a judgment in favor of plain-
tiff entered upon a decision of the court at a Trial Term with-
out a jury, and granting a new trial.

This action was brought by the plaintiff, as state commis-
sioner of excise of the state of New York, against the prin-
cipal and surety upon a bond, which had been given to the
People of the state upon an application for a liquor tax cer-
tificate, to recover the penalty of the bond, by reason of a
violation of its provisions.   The plaintiff had judgment against
the defendant; but, upon appeal to the Appellate Division in
the third department, the judgment was reversed and a new
trial of the action was ordered.   From that determination the
plaintiff has appealed to this court.

The bond was executed by the applicant, the defendant

Bowker, as principal, and by the Ætna Indemnity Company of Hartford, a corporation of the state of Connecticut, as surety. The Ætna Company was authorized to execute bonds in such cases and had appointed, under an instrument filed with the county treasurer, one Channell as "its resident assistant secretary to execute and deliver and attach the seal of said company to any and all bonds to be filed in any city or county of the State of New York, under the provisions of the Liquor Tax Law of the State of New York, * * * all said bonds shall be also duly signed in all cases by the president or vice-president." The bond, in the present instance, when delivered to the county treasurer upon the application for the liquor tax certificate, bore the signature of the president of the company; but it had not been signed by Channell. The bond recited its penal obligation to the People and the proposed application by Bowker, the principal, for a liquor tax certificate. Its condition, briefly stated, was that the principal in the bond, while the business for which the liquor tax certificate was given shall be carried on, would not violate its provisions, or any of those of the Liquor Tax Law. It concluded in this language: "In witness whereof, the said principal hereto has duly signed these presents and the surety hereto has caused its corporate seal to be hereunto affixed, and these presents to be signed by F. T. Maxwell, its president. This bond shall bind said surety company only when signed by F. S. Channell, its lawful resident assistant secretary at Malone, N. Y., county of Franklin, N. Y., whose certificate of authority is duly filed with the officer authorized to issue liquor tax certificates for the county in which the traffic in liquors is to be carried on by said principal."

At the time of the application to the county treasurer for the liquor tax certificate, Channell was absent and a clerk in his office undertook to deliver the bond, without Channell's signature. Prior to Channell's departure, his clerk had asked him the question, whether, in his absence, it would be "all right if I issue a bond to any one who makes application and that you will sign it when you get home;" to which Channell

answered : " Yes if it is agreeable to Mr. Adams."  Adams
was the county treasurer and, before this bond was delivered
to him, Channell's clerk had telephoned to him that Bowker
had made application for a bond.  He testifies that he " said
Mr. Channell is not here, but I will issue the bond and give
it to him and Mr. Channell will sign it when he comes home,
and I said how will it be with you ?  He said all right, or
words to that effect."  Thereupon the bond was given and
filed, and Bowker obtained his liquor tax certificate.  Subse-
quently, and prior to the expiration of the period for which
the certificate ran, he was tried and convicted and his certifi-
cate was declared forfeited, upon a charge of having violated
the Liquor Tax Law in the sale of liquor to Indians.  Chan-
nell, the agent of the Ætna Company, upon his return, but
without any knowledge on his part, or on the part of his clerk,
that Bowker had already been convicted, affixed his signature
to the bond.  It, also, appears that the company was not
informed that Channell's signature was lacking to the bond
when accepted by the county treasurer.

*S. B. Mead* and *Albert O. Briggs* for appellant.  Chan-
nell's powers were unlimited.  He had the power to waive,
and did waive, the provision in the bond which required his
name to be signed thereto.  (*Berry* v. *A. C. Ins. Co.*, 132
N. Y. 58; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 283; *Walsh*
v. *H. F. Ins. Co.*, 73 N. Y. 5; *O'Brien* v. *P. Ins. Co.*, 134
N. Y. 34; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 364; *Pech-
ner* v. *P. Ins. Co.*, 65 N. Y. 264; *Van Schoick* v. *N. F. Ins.
Co.*, 68 N. Y. 439.)  Channell did not exceed his authority in
directing his clerk to issue the bond in suit, and it was a legal
and binding contract in the hands of the county treasurer.
(*Bodine* v. *E. F. Ins. Co.*, 51 N. Y. 123; *Comcl. Bank* v.
*Norton*, 1 Hill, 506; *Clark* v. *G. F. Ins. Co.*, 21 Wkly. Dig.
197; *Wood* v. *Am. F. Ins. Co.*, 149 N. Y. 382; *Robbins* v.
*S. F. Ins. Co.*, 149 N. Y. 477; *Arff* v. *S. F. Ins. Co.*, 125
N. Y. 57; Story on Agency [9th ed.], § 14; May on Ins.
[4th ed.], § 154; 2 Wood on Ins. [2d ed.], § 433; *E. L. Ins.*

*Co.* v. *Fahrenkrug*, 68 Ill. 468; *M. M. M. Ins. Co.* v. *Armstrong*, 45 Ill. App. 217.)

*John P. Badger* for respondent. Channell, the assistant secretary of the surety company, possessed only such powers as were conferred by the instrument of authorization, or " such as third persons had the right to assume he possessed." (*Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 364; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 281; *G. E. Co.* v. *L. & L. & G. Ins. Co.*, 159 N. Y. 418.) While Channell could delegate to his clerk ministerial duties of his agency, he could not so delegate duties discretionary in their character, such as his decision as to the application and character of the applicant. (*Comcl. Bank* v. *Norton*, 1 Hill, 505; *Lewis* v. *Ingersoll*, 1 Keyes, 355; *Carroll* v. *Tucker*, 50 N. Y. S. R. 611; *People* v. *Bank of N. A.*, 75 N. Y. 555.)

GRAY, J. The salient facts in this case are that the bond, which the county treasurer accepted, was an incomplete instrument, for the want of the signature of the company's representative at Malone; that the company's representative had never passed upon Bowker's application for the company to become surety for him; that the county treasurer was aware of these facts, at the time the bond was offered and that the company never had knowledge of the delivery of its obligation in an incomplete form and without the exercise of its agent's judgment upon the application.

The appellant's claim is that the powers of Channell, the company's resident agent, were unlimited and that he could ". waive the provision in the bond which required his name to be signed thereto." Undoubtedly, Channell possessed a wide and general authority to bind the company, by issuing its bonds to secure the grant of liquor tax certificates to applicants; but I know of no principle of the law of agency, and I am not aware of any authority in the reports, which will sustain the doctrine now contended for by the appellant, in all its length and breadth. In order to do so, we' should have to

hold that, though Channell was appointed the company's agent for a particular class of business, wherein the assumption of an obligation was to be through his own act and evidenced by his own signature, he might, nevertheless, waive the exercise of his judgment and delegate to another the performance of the duty confided to him.

The powers of a general agent extend to the doing of all acts connected with the business of his principal and his authority will be deemed to include all usual means for the effective performance of his duties; in the employment of clerks, or of subordinate agencies, for the performance of acts where an exercise of the agent's judgment, or discretion, is not demanded, nor presumed. Reference is made by the appellant to decisions in cases arising upon contracts of insurance and they furnish many illustrations of the extreme lengths to which the courts have gone in enforcing the liability of insurance companies, upon obligations created for them by their agents with an apparent disregard of the conditions imposed upon the exercise of their powers. However far those decisions have gone, in this court, certainly, I think I am safe in observing that there has steadily been an observance of this qualification, that, if the limitations upon the agent's authority to act are known to the person with whom he is dealing, or if the transaction is such as to charge him with the duty of inquiring into the extent of the agent's authority to do the particular act, the principal will be protected, if the act be unauthorized, or in clear excess of the agent's powers, and if the principal be an innocent actor in the transaction. The general rule, with respect to the powers of a general agent, was stated by the Supreme Court of the United States in *Insurance Company* v. *Wilkinson*, (13 Wall. 222), in this language, that "they are, *prima facie*, co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals." This statement of the rule has received the indorsement of this court in *Pechner* v. *Phœnix Ins. Co.*, (65 N. Y. 195, 209); *Marvin* v. *Universal L. Ins. Co.*, (85 ib. 278,

283), and *Walsh* v. *Hartford F. Ins. Co.*, (73 ib. 5). In the latter case it was said that " if a person dealing with an agent knows that he is acting under a circumscribed and limited authority, and that his act is in excess of, or an abuse of the authority actually conferred, then, manifestly, the principal is not bound, and it is immaterial whether the agent is a general, or a special one. The principal has the unqualified right, as between himself and the agent, to define and limit the agent's authority." *Quinlan* v. *Providence W. Ins. Co.* (133 N. Y. 356), more recently, re-asserted the same doctrine. In that case it may be noted, it was held, where a policy of insurance prescribed that the company should not be bound unless the execution of the agent's power was indorsed in writing upon the policy, that " the condition is of the essence of the authority, and the consent, or act, of the agent not so indorsed is void." Broad as may be the authority of corporate agents to waive conditions, which enter into the validity of a contract of insurance at its inception, however appearing in the policy when delivered, (*Berry* v. *American C. Ins. Co.*, 132 N. Y. 49, 58), I think that the present case is not within the operation of any such rule. It is a case where the extent of the agent's authority to bind the principal at all was made known to the party with whom he was dealing, and where the principal had the right to rely upon the fact for its protection. The instrument, by which the Ætna Company constituted Channell its agent, authorized him " to execute and deliver and attach the seal of the company to any and all bonds to be filed,     *     *     *     under the provisions of the Liquor Tax Law of the State," etc., and this implies, plainly, that he was intrusted with a duty which, necessarily, involved the exercise, on his part, of judgment before executing and delivering the bonds of the company, which were deposited with him for the purpose. The bonds, themselves, were explicit in declaring that they " shall bind said surety company only when signed by F. S. Channell, its lawful resident assistant secretary at Malone, N. Y., county of Franklin, N. Y., whose certificate of authority is duly filed with the officer authorized to issue liquor tax certificates," etc. The county

treasurer, who was that officer and who, as such, was to approve of the bond accompanying the application for a certificate, had full knowledge upon the subject of the agent's powers. Indeed, when notified of Channell's absence by his clerk, he was willing to accept the bond, upon the representation of the clerk that Channell would sign it when he returned. Therefore, he took the risk that the obligation might never become binding upon the surety company.

Whatever we might assume with respect to the general powers of Channell to bind his principal, he was not authorized to delegate to another the exercise of the power to decide upon an application and upon the character of the applicant in such cases. He might authorize his clerk to do a great many things, in the ordinary course of the business of the agency, which, possibly, by reason of its magnitude, he might be incapacitated from doing personally, or which were more or less mechanical, or mere matters of detail; but the purpose for which his agency was constituted was that his judgment, or discretion, should be exercised in issuing the bonds. To that extent, the authority was personal. He could not delegate to his clerk the power to pass upon the application for the company to become a surety; any more than, in the case of *Commercial Bank* v. *Norton*, (1 Hill, 501), to which the appellant refers, the general agent was deemed capable of delegating to a clerk the power, generally, to bind the partnership by an acceptance of commercial paper. In that case, the agent had passed upon the question of accepting the bill and he merely directed the bookkeeper of the firm to write the acceptance. That was a mechanical act. In the present case, what Channell did, prior to his departure, was to authorize his clerk to "issue a bond to any one who makes application" and to say that he would sign it upon his return. That was, obviously, the delegation of a particular power, with the exercise of which the agent was personally intrusted. He never passed upon the application in question and the company could not be deprived of the benefit of the exercise of his judgment in the matter, for which it had stipulated.

For these reasons, I advise that the order appealed from should be affirmed and that judgment absolute should be rendered against the plaintiff, pursuant to the stipulation.

VANN, J. (dissenting).   The plaintiff is the state commissioner of excise and the defendant is a foreign corporation authorized to execute bonds required from holders of liquor tax certificates pursuant to the provisions of the Liquor Tax Law.   One Channell was the resident assistant secretary and general agent of the defendant, residing at Malone, New York, and as such had received blank bonds executed by one of its officers, which provided that they should become binding only when signed by him.   On the 18th of December, 1901, the defendant Bowker applied to the county treasurer of Franklin county for a liquor tax certificate under subdivision one of section eleven of the Liquor Tax Law.   At the same time Bowker paid the tax and filed a bond executed by himself, as principal, and by the defendant through its president, as surety, but it had not been signed by Channell because he was away from home.   Before going away for the winter on account of his health, Channell had instructed his clerk, who had charge of his insurance business during his absence, that if it was agreeable to the county treasurer he might issue and deliver liquor tax bonds to any one who made application therefor and said that he would sign them on his return.   Said bond was issued by the clerk under this authority, the premium was paid to him and in behalf of Channell he made the usual monthly report to the defendant and paid over the premium with others in the usual way. The bond was approved and accepted by the county treasurer on the 18th of December, 1901, upon the assurance of the clerk that it would be signed by Mr. Channell on his return, and in reliance thereon a liquor tax certificate was issued to the applicant on the same day.

On March 27th, 1902, Bowker was found guilty upon an indictment which accused him of selling liquor to an Indian in violation of subdivision four of section thirty of the Liquor

Tax Law. A fine was imposed, which he paid, and his liquor tax certificate was canceled. Channell did not return until about the 13th of May when he signed said bond without knowing that Bowker had violated the law and had been convicted therefor. The defendant retained the premium and so far as appears never offered to return the same. This action, which was brought to recover the penalty of the bond, was tried before the court without a jury and the trial judge found in favor of the plaintiff, but upon appeal the Appellate Division reversed his judgment and ordered a new trial on questions of law only, the facts being allowed to stand undisturbed.

The delegation of authority to transact any business includes authority to transact it in the usual way. (*Ellis* v. *Albany City Fire Ins. Co.*, 50 N. Y. 402, 406 ; *Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117, 123.) In the latter case the court said : " We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them, and that they could not transact their business if obliged to attend to all the details in person, and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and take payment of premiums in cash or securities, and to give credit for premiums, or to demand cash ; and the act of the clerk in all such cases is the act of the agent and binds the company just as effectually as if it were done by the agent in person. The maxim of *delegatus non potest delegare* does not apply in such a case."

Judge STORY, referring to this maxim, says in his work on Agency (§ 14) : " In general, therefore, when it is intended that an agent shall have a power to delegate his authority, it should be given to him by express terms of substitution. But there are cases in which the authority may be implied ; as where it is indispensable by the laws, in order to accomplish the end ; or it is the ordinary custom of trade ; or it is understood by the parties to be the mode in which the particular business would or might be done."

In reliance on this principle it was held in *Clark* v. *Glens Falls Ins. Co.* (21 N. Y. Wkly. Dig. 197), affirming the judgment of the Special Term upon the opinion of MARTIN, J., that an insurance agent can authorize his clerk to countersign policies and the act of the clerk in such case is the act of the agent and binds the company as effectually as if it were done by the agent in person, even though the policy requires that it shall be countersigned by the authorized and commissioned agent.

So Mr. MAY in his work on Insurance says : " Generally agents of insurance companies authorized to contract for risks, receive and collect premiums, and deliver policies, may confer upon a clerk, or subordinate, authority to exercise the same powers. The service is not of such a personal character as to come under the maxim *delegatus non potest delegare.* \* \* \* It is not to be expected that a general agent should personally attend to all the affairs under his control. He may employ all necessary clerks, sub-agents and surveyors to enable him to transact the business with accuracy, intelligence and promptness, and may authorize his clerks to contract for risks so that they may bind the company by parol contract." (1 May on Ins. §§ 154, 154A.)

As was said in *Arff* v. *Star Fire Ins. Co.* (125 N. Y. 57, 65) : " An agent of an insurance company has the right to, and indeed it is the expectation of the company that he will employ such clerks and other assistants as may be necessary and proper in order that he may do the business for which he has been appointed agent. \* \* \* Upon the question of the character of the service we think it is sufficient that the person is engaged by the agent to do for him some portion of the ordinary, usual and well-known duties pertaining to the position of the agent, and what he does in the course of that employment and within its general scope is done by the agent. \* \* \* Nor does the provision in the policy that no one not holding the commission of the company shall be considered as its agent, prevent the agent's employment of the usual and indeed necessary clerical and other

assistants, in order to enable them to properly perform their duties as commissioned agents of the company. And when thus employed the ordinary rules of law are applicable to their acts and positions. We think that if Strecker were exclusively employed by the agents, and that his duties could only be honestly discharged while the agreement between them lasted by giving his entire service in that line to the agents of the defendant, and if he were thus employed at the time that he procured this application and received this notice, the defendant is bound by such notice the same as if it had been given in person to their agents." (See, also, *Kuney* v. *Amazon Ins. Co.*, 36 Hun, 66; *Cook* v. *Ætna Ins. Co.*, 7 Daly, 555; *Eclectic Life Ins. Co.* v. *Fahrenkrug*, 68 Ill. 463; *Manufacturers & Merchants Ins. Co.* v. *Armstrong*, 45 Ill. App. 217, 219; *Myers* v. *Keystone M. L. Ins. Co.*, 27 Pa. St. 268, 270; *Hibernia Ins. Co.* v. *O'Connor*, 29 Mich. 241; 21 Am. & Eng. Encyc. Law, 856; 2 Wood on Ins. § 433.)

By a formal power of attorney Mr. Channell was authorized by the defendant " to execute and deliver and attach the seal of said company to any and all bonds to be filed in any city or county of the state of New York, under the provisions of the Liquor Tax Law of the State of New York." There was no limitation whatever upon this broad power. Such an instrument must be read in the light of what the parties, according to its terms, must have had in contemplation. A general agent, whose territory embraced the entire state, could not reasonably be expected to personally transact all the business which might come to him. Of necessity he would have to employ clerks and sub-agents, giving them proper instructions and holding them responsible to himself for compliance therewith, as he was responsible to the company for all he did through them. He could not, or at least might not be able to do the business of the defendant in any other way and, hence, this was an implied part of his power. The implication springs both from the words of the instrument and from the custom of doing insurance business, which is of such long standing and so universal that it was recognized over thirty

years ago in the *Bodine* case, and nearly twenty years later in the case of *Arff.*

All insurance agents who conduct business on a large scale necessarily act through their clerks and in many cases issue policies and make contracts through them without personal knowledge of the facts affecting the risk. The insurance business could not be carried on in most offices in any other way. The agent does the business through his clerk, not by delegating his powers, but by exercising them himself through the assistance of his clerk. If the agent goes away for health or pleasure all business cannot be suspended during his absence, and it would not be to the interest of the company that it should be, for renewal certificates must be issued, new policies written, premiums collected, consents to assignments and transfers given the same as if he were at home, and, indeed, in most cases, he would have as much knowledge of what was done in the one instance as in the other. The clerks and sub-agents have no direct relation to the company, but, acting under the instructions of its general agent, they transact any business that he can transact in person and through him bind the company. This is part of his implied power, arising from the usages of the business and the absence of any limitation upon his power as a general agent.

The bond in question was issued under the direction of Mr. Channell by his clerk in charge of his insurance business, and the former as the general agent of the defendant had power to and did waive in advance the affixing of his own signature until his return home. When he came back he ratified what his clerk had done by signing the bond, and if it had not taken effect already it then took effect by relation as of the date when it was first delivered to the county treasurer and bound the defendant for all intervening violations. It was immaterial whether he knew that Bowker had violated the law and had made the company liable, for it was his duty to sign the bond. Acting as the general agent of the defendant, he had agreed to sign it. The company had the insurance premium in its treasury, and the plaintiff at any time had the

equitable right to compel it to perfect the bond. If, before Bowker sold the liquor in violation of law, the plaintiff, by a bill in equity, could have compelled the defendant to deliver the bond properly signed, which cannot be denied, he could have done so after the violation, because he had done all that the law required of him, and was not responsible for the change in the situation. He had paid or caused to be paid the premium which the company kept, and it would be a fraud on its part to refuse to cause the policy to be signed even after the condition had been violated by the principal. That was one of the chances the defendant took, and one of the contingencies against which the plaintiff needed protection. The premium was paid for that purpose, and nothing further was required from the plaintiff, who had fully performed on his part. Action was then required by the defendant, and if the bond was not perfected through its fault the law will not permit it to take advantage of that fact. It could not take the money and refuse to perform. The premium was paid for a bond, and the law exacts a bond in return. The company cannot keep what was paid for insurance and claim there was no contract to insure.

In an early case a general agent with authority to issue policies in a certain district which did not include the city of Utica, in good faith accepted thirty dollars from the plaintiff as a premium for a policy on his buildings in Utica. The money was paid and a receipt given late in the evening of March 30th, when the agent said he was busy, but would deliver a policy at a future day. Three or four hours later the buildings burned and the company refused to pay, because the policy had not been delivered. The agent made out the policy, but at first refused to deliver it, and the company notified the plaintiff that the agent's authority would be at once revoked. After this the agent, without knowledge of the attempt to revoke his powers, as the letter of revocation had not reached him, voluntarily delivered the policy to the plaintiff, without any solicitation from him. A recovery on the policy was sustained. (*Lightbody* v. *North American Ins,*

*Co.*, 23 Wend. 18.) Judge Bronson, speaking for the court, said : " If the policy was well delivered, it took effect by relation from the day of its date, which was the day on which the premium was paid and the contract concluded. (*Jackson* v. *Ramsay*, 3 Cow. 75, and cases cited.) It was the manifest intent of the parties that the contract should operate from the day of its date, so as to give the plaintiff the same legal remedy which he would have had if the policy had in fact been delivered on that day ; and the law will give effect to that intention. \* \* \* The delivery was well made and bound the defendants, unless there was something in the circumstances of the case which should have precluded the plaintiff from receiving the policy when it was offered to him. \* \* \* He had a perfect equitable right to the delivery of the usual policy, which he might have enforced in the proper forum. (*Perkins* v. *Washington Ins. Co.*, 4 Cow. 645.) Having this equitable right to the policy, he was clearly at liberty to receive it, when voluntarily tendered to him by one who had authority to deliver it. It would be a refinement in law, if not in ethics, to hold a man precluded from accepting that which was rightfully his due, because he happened to know that the debtor did not intend to discharge his obligation. \* \* \* The plaintiff accepted that which was voluntarily tendered and was his rightful due, with the knowledge that his debtor did not intend he should have it. That cannot be a good impeachment of his title."

When Mr. Channell's health required him to go south for the winter he placed his clerk in charge of his business. He exercised his discretion and judgment as an agent when he relied on the discretion and judgment of his clerk and told him to issue a bond " to any one who makes application." Whether this was just to the company or not, is a question between him and the company which selected him, not between the plaintiff and the defendant. As the general agent of the company he could authorize his clerk to sign his name to a bond and could waive the condition requiring his own signature, until it was practicable for him to sign in person,

(*Berry* v. *American Central Ins. Co.*, 132 N. Y. 49, 58; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382.) There was no restriction in the letter of attorney or in the bond upon the power of Channell to waive any condition, but he had general powers and could do what the company itself could do in this regard. If he had accepted the premium and had personally delivered the bond unsigned by himself, the liability of the defendant in equity would not be open to question. He had the right to authorize his clerk to deliver the bond without his signature and he thereby waived his signature until his return. What he did the company did, for he was a general agent and could bind and loose as if he were the company itself. The bond was binding in equity on the company·from the date of its delivery until his return when he signed it, and thenceforward it was binding in law because every·condition had been performed. There was a waiver or estoppel until performance became practicable and then actual performance.

As I find no error of law committed by the trial judge which authorized the action of the Appellate Division, I dissent from the judgment about to be pronounced by the court.

CULLEN, Ch. J., O'BRIEN and HAIGHT, JJ., concur with GRAY, J.; BARTLETT and MARTIN, JJ., concur with VANN, J.

Order affirmed, etc.