MABLE BARBOUR, Appellant, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

Third Department, November 15, 1916.

Insurance — life insurance — agreement of insurance agent to notify father of beneficiary if insured failed to pay premiums — when such promise not binding upon insurer — lack of consideration and mutuality — power of agent limited by terms of policy.

Where a husband held a life insurance policy upon his own life, in which his wife was named as beneficiary, he reserving, however, a power of substitution, a promise made by a local agent of the insurer to the father of the wife to notify him if the insured should make default in payment of premiums so that the father could keep the policy alive for the benefit of his daughter, was not binding upon the insurer so as to entitle the wife to hold the company liable for the amount of the policy on her husband's death, where he had in fact allowed the policy to lapse by non-payment of premiums.

Such promise made by the agent to a person having no connection with the policy was without legal consideration, and also lacked mutuality, for it is the essence of estoppel, of waiver and of contract that there shall be reciprocal obligations or considerations, and these between the parties to the agreement.

Moreover, the alleged waiver sought to be established by such promise of the agent was not binding on the company where the policy expressly provided that no agent had power to modify the contract, or, in the event of lapse, to reinstate the insured, or to extend the time of payment of any premium.

APPEAL by the plaintiff, Mable Barbour, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Saratoga on the 24th day of November, 1915, upon a dismissal of the complaint by direction of the court at the close of the case, and also from an order entered in said clerk's office on the 23d day of November, 1915, granting defendant's motion for a nonsuit and for a dismissal of the complaint, and for the direction of a verdict in its favor.

*Rockwood & McKelvey* [*L. B. McKelvey* of counsel], for the appellant.

*Alexander & Green* [*William Carrell Diamond* and *Allan McCulloh* of counsel], for the respondent.

WOODWARD, J.:

The plaintiff is the widow of one Charles H. Barbour who, on the 12th day of September, 1913, procured a policy from the defendant upon his life for the sum of $5,000. This policy is conceded to have been made and delivered regularly and in full compliance with the terms and conditions of the defendant corporation, the first annual premium having been paid, continuing the policy in force up to the 11th day of September, 1914. The assured entered into business in the city of Albany, and in the fall of 1914 became financially involved, whereupon his father-in-law appears to have stepped in and taken charge of the business, finally procuring the appointment of a receiver for the same. Mr. Barbour accepted employment under the receiver, and, being unable to meet the second annual premium on the 11th day of September, 1914, he applied for and received certificates of extension from time to time upon the payment of a consideration, so that the policy was concededly in force on

the 11th day of February, 1915. Mr. Barbour died on the 23d day of March, 1915, without having made any further payments upon the second annual premium, and the policy, under its terms, lapsed on the twelfth day of February preceding; unless the company had by its conduct waived the performance of this condition, or had in some manner estopped itself from asserting the defense which is here urged.

The plaintiff was the beneficiary named in the policy, but of course had no substantial right in the same until after the death of her husband while the policy was in force; up to his death, and while in possession of the policy, Mr. Barbour had an absolute right to change his beneficiary, and the plaintiff was not a party to the contract in any material sense while her husband was alive and prepared to act. The plaintiff's theory is that after her husband became financially embarrassed, her father practically took charge of the business and secured the appointment of a receiver for the business; that her father, fearing her husband would not be able to keep the policy in force, visited the office of Mr. McNamee, the manager of the Albany office of the defendant, and there entered into an agreement with the said McNamee to the effect that the latter should inform the plaintiff's father of any prospective lapse in the policy in time to enable the father to make the necessary payments to keep the same in force. This interview is alleged to have occurred on the 11th day of December, 1914, at which time Mr. McNamee told plaintiff's father that the policy was then in force, and that he would notify plaintiff's father before the policy lapsed, and the father claims that he promised to make payments on said policy when the same were demanded. It is not claimed that plaintiff's father was authorized by Mr. Barbour to interfere with this contract of insurance; he was a stranger to the contract, and it appears without dispute that Mr. Barbour himself applied for and secured two extensions, paying therefor, subsequent to this alleged agreement, and then permitted the same to lapse in February preceding his death in March. It can hardly be contended that plaintiff's father would have been legally bound to pay the subsequent premiums on the policy of insurance if Mr. McNamee had demanded them from him; there was no

legal consideration for the promise of plaintiff's father, and he, in common with the insured, could have permitted the policy to lapse without any obligation to make further payments. It is the option of the insured to pay the premium and continue the policy in force; he is not legally bound to do so, and the alleged promise of the plaintiff's father to pay the premiums. on the policy of his son-in-law, and thus keep the same in force, had no binding effect upon him; he could have changed his mind at any moment — would undoubtedly have done so if the son-in-law had exercised his right to change his beneficiary — so that there was no mutuality in the alleged agreement, and it is of the essence of estoppel, of waiver and of contract that there shall be reciprocal obligations or considerations, and these between the parties to the agreement. (16 Cyc. 747; *Walrath* v. *Redfield,* 18 N. Y. 457, 460; *Marbury* v. *Barnet,* 17 Misc. Rep. 386, 388; *Plumb* v. *Hallauer & Sons Co.,* 145 App. Div. 20, 24; *Booth* v. *Milliken,* 127 id. 522, 525; 16 Cyc. 805.)

The defendant's local manager — for this is clearly the extent of his holding out by the defendant — while admitting the conversation, says that plaintiff's father asked him to get the policy from his son-in-law, and that if he procured the policy he (plaintiff's father) would make the premium payments; but taking the fact as found by the jury that Mr. McNamee promised to notify plaintiff's father before the policy lapsed, we have seen that this alleged promise was without lawful consideration and was not binding upon plaintiff's father, and it may well be that Mr. McNamee, acting in entire good faith, did not understand his promise to extend beyond the then term of extension, while it appears in evidence that Mr. Barbour himself procured two extensions of the contract subsequent to this conversation.

But the policy itself, which had become effective by the payment of the first yearly premium, and was in the possession of Mr. Barbour, and appears to have been seen and read by the plaintiff, with the opportunity to the plaintiff's father to know its contents, provided that "agents are not authorized to modify, or in event of lapse, to reinstate this policy, or to extend the time for payment of any premium or

installment thereof." It also provided, and gave notice to the parties to the contract, that the payment of all premiums in advance was to be made "at the Home office, or to any Agent or Agency Cashier of the Society, upon delivery on or before their due date, of a receipt signed by an executive officer of the Society (the President, a Vice-President, Secretary, Assistant Secretary, Assistant to the President, Comptroller, Deputy Comptroller, Treasurer, an Assistant Treasurer, or Auditor) and countersigned by said Agent or Agency Cashier," and further that "except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment thereof become payable." It thus appears that the plaintiff and her father, at the time of this alleged agreement with Mr. McNamee, had notice in the policy in the possession of Mr. Barbour, and which was available to them, or had been, that the agents of the society had no power to modify the existing contract; the extensions which had been granted were made through the home office in New York, and the defendant appears to have taken every precaution not to become involved in liability upon this contract beyond its written provisions brought to the attention of the contracting parties by delivery of the policy; yet the plaintiff seeks by a mere conversation between her father — a stranger to the contract — and a local manager of the defendant, to impose an obligation of $5,000. We are of the opinion that no adjudicated case in this State has proceeded thus far.

There are cases in which the courts have gone a long way to give force and effect to contracts of insurance even as against the provisions of the contract where injustice was likely to result, but this rule is confined, we believe, to matters affecting the inception of the contract, and not to the completed contract after it was once effective by the payment of the original premium and the delivery of the policy. It is one thing to prevent the company from taking advantage of provisions in its own contracts which run counter to the facts known to the agent in the making of the contract, and quite another thing to attempt to modify an existing contract, not between the contracting parties, but between a limited agent

on the one hand and a stranger to the contract on the other, and that is the situation in the present case. The attempt is made to hold the corporation to a liability which it never assumed; which it specially declares in its contract delivered to the insured that it will not assume, and we find no authority which holds that this may be done. The case of *Cullinan* v. *Bowker* (180 N. Y. 93, 97), and the authorities cited in that case, in connection with *Russell* v. *Prudential Insurance Co.* (176 id. 178), are sufficient to show that the current and decided weight of authority are against the plaintiff in this action, and it is reasonably certain that no court will sanction the theory that an agreement with a stranger to the policy, under the circumstances disclosed in this case, can be made to enlarge the written terms of the policy after its lawful inception and continued possession for more than one year by the assured.

The judgment and order appealed from should be affirmed, with costs.

KELLOGG, P. J., concurred in result.

Judgment and order unanimously affirmed, with costs.